Louis GRABOWSKI and Helen
Grabowski

v.

TURNER & NEWALL, et al.

Carl A. DaMATO and Rose DaMato

v.

BELL ASBESTOS MINES, LTD., et al.

Pearl LINDAHL, Admn. of the Estate of
Fred S. Lindahl, Deceased

v.

BELL ASBESTOS MINES, LTD., et al.

Margo L. GRAVATT, Admn. of the
Estate of Clifford Henry Gravatt,
Jr., Deceased

v.

BELL ASBESTOS MINES, LTD., et al.

Modesta C. MARINCOLA, Admn. of the
Estate of Paul G. Marincola, Deceased

v.

TURNER & NEWALL, LTD., et al.

Albert SAYLOR, Admn. of the Estate
of Jennie Saylor

v.

TURNER & NEWALL, et al.

Jennie I. PEARSON, Admn. of the Estate
of Richard D. Pearson, Deceased

v.

BELL ASBESTOS MINES, LTD., et al.

Civ. A. Nos. 78–3046 and 79–4337
to 79–4342.

United States District Court,
E. D. Pennsylvania.

Oct. 27, 1980.

Edward Rubin, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., Thomas Mullaney, Jr., Norristown, Pa., for plaintiffs.

Robert M. Britton, Post & Schell, P. A., Philadelphia, Pa., for Bell Asbestos Mines, Ltd.

Donald J. P. Sweeney, Philadelphia, Pa., for Special Asbestos Co., Inc.

John P. Mason, Philadelphia, Pa., for Turner & Newall, Ltd.

Edward Greer, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for GAF Corp.

Swartz, Campbell & Detweiler, Philadelphia, Pa., for Certain-Teed Corp.

Patrick T. Ryan, Ward T. Williams, Drinker, Biddle & Reath, Philadelphia, Pa., David Booth Beers, Shea & Gardner, Washington, D. C., for Cassiar Asbestos Corp., Ltd.

Theodore W. Flowers, Richard M. Jordon, White & Williams, Philadelphia, Pa., for Huxley Development Corp.

MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Defendants move for summary judgment in these cases, asserting that plaintiffs in each case did not file suit within the period allowed by the appropriate statute of limitations. Because of the similarity of legal issues among these cases, the Court will consolidate its rulings with one memorandum of law.

Plaintiffs are workers, or the representatives of decedent workers' estates, who were injured by prolonged exposure to asbestos. They have brought actions sounding in tort for the injuries sustained against the defendants, suppliers of asbestos.

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part:

(c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See *Bryson v. Brand Insulation, Inc.*, 621 F.2d 556 (3d Cir. 1980); *Mortensen v. First National Savings and Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). The facts relevant to the timeliness of plaintiffs' actions recited below are not in dispute and summary judgment is therefore appropriate in some of the cases enumerated below.

*Discussion*

A. *Louis Grabowski and Helen Grabowski v. Turner & Newall, et al. No. 78–3046*

1. Plaintiff was examined by Dr. David L. Forde on April 5, and April 8, 1976, and on May 1, 1978.

Dr. Forde's examination in 1976 revealed "abnormal pleural densities . . . compatible with asbestos exposure." Dr. Forde's examination in 1978 revealed a condition "quite compatible with his asbestos exposure."

2. Plaintiff testified in a deposition that Dr. Forde told him in "the spring of 1976" that "it was asbestos getting into the sides of the walls of the lungs" that caused plaintiff's symptoms. Plaintiff testified, "I don't understand medical terms too well, but he tried to explain if in some way that it was relative to asbestos, I believe. I believe he mentioned it was relative to asbestos."

3. In the same deposition, plaintiff testified as follows:

Q. When did anyone definitely tell you that you had problems directly associated with breathing asbestos, for the first time?

A. Dr. Galgon.

Q. When was that; when did you see Galgon?

A. '78.

Q. Did Dr. Ford ever tell you, specifically, that you had problems associated with breathing asbestos?

A. Well, he told me, I had asbestosis.

Q. When was that?

A. In '78.

Q. Was that the first time you were told by a physician that you had a problem relating to breathing asbestos?

A. Yes.

4. Plaintiff filed suit on September 12, 1978.

B. *Carl A. DaMato and Rose DaMato v. Bell Asbestos Mines, Ltd., et al., C. A. No. 79–4337*

1. Hospital records of May 13, 1975 show that plaintiff complained of persistent cough, shortness of breath, and claimed he had suffered from asbestosis for several years.

2. Records of May 1974 show that plaintiff's physician after rendering a diagnosis of plaintiff's illness advised plaintiff to avoid "dusty" work.

3. On April 12, 1976, plaintiff filed two Petitions for Compensation under both the Occupational Disease Act and the Workmen's Compensation Act.

4. On October 12, 1976 the Workmen's Compensation Board referee found that

plaintiff had been 70% disabled "due to Asbestosis," and awarded compensation.

5. Plaintiff filed suit in April 1979.

C. *Pearl Lindahl, adm. of Estate of Fred S. Lindahl, deceased v. Bell Asbestos Mines, Ltd., et al., C. A. No. 79–4338*

1. Fred Lindahl, plaintiff's decedent, began to lose weight, had difficulty breathing, and consulted a doctor in September, 1971. Plaintiff testified that these were symptoms of asbestosis, but it is not clear that she was aware of the cause in 1971.

2. Plaintiff's decedent applied for workmen's compensation in 1972, seeking benefits for disablement caused by asbestosis.

3. Plaintiff's decedent died on or about May 3, 1973. Plaintiff testified she believed at that time that plaintiff's decedent had died of cancer caused by exposure to asbestos.

4. Plaintiff filed this action on April 30, 1979.

D. *Margo L. Gravatt, adm. of Estate of Clifford Henry Gravatt, Jr., deceased v. Bell Asbestos Mines, Ltd. et al., C. A. No. 79–4339*

1. Plaintiff's decedent, Clifford Gravatt was admitted to Lankenau Hospital on May 4, 1975. The admissions documents contain an entry "final diagnosis" under which is entered "mesotheliomic". Decedent's Discharge Summary, dated May 20, 1975 repeats the earlier diagnosis, mesotheliomic, and contains the notation, "he has worked as an asbestos worker for approximately eight months during the Second World War, back in 1941."

2. On February 13, 1976 Christopher Holyroyde, M.D. wrote to Hunter S. Neal, M.D. a letter explaining decedent's condition. Dr. Holyroyde wrote "In view of his clear cut history of asbestos exposure, I see little merit in [alternate treatment] ... and have explained this to the family.... I believe a trial of chemotherapy is worthwhile. This has been explained again to the patient and his family...."

3. Plaintiff's decedent was admitted to Lankenau Hospital on May 3, 1976. Diagnosis was entered as "carcinoma and pleura mesothelioma."

4. Plaintiff's decedent died on May 22, 1976.

5. A discharge summary from Lankenau Hospital, dated May 22, 1976 states in part:

This was the second Lankenau Hospital admission for this 54-year-old man with a known malignant mesothelioma of the left lung and pleura.... Following lengthy discussion with relatives and with the patient himself, the decision was made to keep Mr. Gravatt as comfortable as possible.

6. Suit was filed in 1979.

E. *Modesta c. Marincola, Admn. of Estate of Paul G. Marincola, deceased v. Turner & Newall, Ltd., et al., C.A. No. 79–4340*

1. Decedent died in February 1966.

2. Decedent's Discharge Summary from Hahnemann Hospital in Philadelphia of February 15, 1966, contains an entry "Final Diagnosis," under which is typed "metastatic carcinoma to the brain and meninges, primary from bronchogenic carcinoma on the left upper lobe."

3. Plaintiff testified that Dr. Hand at Hahnemann Hospital told her that her husband died of lung cancer.

4. Plaintiff filed suit on April 30, 1979.

F. *Albert Saylor, Admn. of Estate of Jennie Saylor v. Turner & Newall, et al., C.A. No. 79–4341*

1. Plaintiff's decedent died on September 26, 1967.

2. Decedent's death certificate states that she died as a result of "Pulmonary insufficiency due to asbestosis."

3. Plaintiff testified that decedent's doctor told him that decedent's death was caused by asbestosis which resulted from working near asbestos. Plaintiff also testified that he understood in 1967 that dece-

dent's illness was caused by fiber which she came into contact with at her place of work.

4. Plaintiff filed suit on April 30, 1979.

G. *Jennie I. Pearson, Admin. of the Estate of Richard D. Pearson, decedent v. Bell Asbestos Mines, Ltd., et al. C. A. No. 78–4342*

1. Decedent's hospital records from Lee Memorial Hospital, Fort Meyers, Florida, include a "Progress Record" form on which are printed instructions for the treating physician. These instructions state, "Record Progress of Case, Complications, Change in Diagnosis, Condition on Discharge, Instructions to Patient." An entry of "6/7/72" states "malignant mesothelioma would be a possibility." An entry of "6/10/72" states "I told he [sic] and his wife of diagnosis and what problem is." That entry is signed by "J. B. O'Bryan," the treating physician.

2. Plaintiff testified that in 1973 Dr. O'Bryan told her that her husband died as a result of contact with asbestos fibers.

3. Suit was filed April 30, 1979.

Jurisdiction in these cases is based on diversity of citizenship among the parties, and, as the claims arose in Pennsylvania, Pennsylvania law is controlling.

Actions for personal injury and actions brought under the Pennsylvania Survival Act must commence within two years, Pa. Stat.Ann. tit. 12, § 34 (Purdon), *replaced by* 42 Pa.Cons.Stat.Ann. § 5524.[1] Before 1976, actions brought under the Wrongful Death Act, Pa.Stat.Ann. tit. 12, § 1601 (Purdons) were required to be brought within one year. Pa.Stat.Ann. tit. 12, § 37 (Purdons).[2]

■ It is settled law in Pennsylvania that in the case of injury or disease for which the causes are not readily apparent,

the statute of limitations does not begin to run against the prospective plaintiff until "the time that the plaintiff knows or reasonably should know the cause of his injury." *Bayless v. Philadelphia National League Club,* 579 F.2d 37, 39 (3d Cir. 1978). It is not enough for a plaintiff to know that he has been injured. Plaintiff must be able to recognize the physical cause of his injury. As the court in *Bayless* stated:

> If common sense and reason dictate that the limitation period is not to run at least until a plaintiff knows he has been hurt, it should not run until he can reasonably determine what or who hurt him. Ordinarily the two events will occur simultaneously, but this need not always be so. There are cases where one knows of an injury, but not its cause. [citation omitted]

*Bayless* at 42.

■ Plaintiff may not, however, be entirely passive. By delaying the running of the statute until plaintiff could reasonably be expected to discover the cause of his injury, the law of Pennsylvania imposes a burden of diligence upon plaintiff to inform himself. Thus the law's indulgence for plaintiff's subjective ignorance will be tempered by an objective test of reasonable inquiry.

> Under the law of Pennsylvania, it is the duty of one asserting a cause of action against another to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based, and to institute suit within the prescribed statutory period [citations omitted]. Mere mistake, misunderstanding, or lack of knowledge is not sufficient to toll the running of the statute. [citations omitted].

*Schaeffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963).

---

1. Pa.Cons.Stat.Ann. § 5524(2) states that an action to recover damages "for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years.

2. In 1976 the Legislature extended the period of limitation for wrongful death actions to two

years. This extension, which was effective as of June 27, 1978, was expressly limited by § 25(b) of the Act of July 9, 1976, P.L. 586, No. 142, which states that "[n]o cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act."

In a recent decision of the Court of Common Pleas in Philadelphia, *Volpe v. Johns-Manville Corp.*, C.C.Pleas (May 2, 1980), Judge Takiff reviewed and analyzed the Pennsylvania statute of limitations in the context of an action brought against an asbestos supplier. This Court finds the reasoning and scholarship of Judge Takiff very persuasive, and, mindful of the dictates of *Erie v. Tompkins*, 306 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this Court recognizes that it should give due regard to Judge Takiff's interpretation of Pennsylvania law. See *Becker v. Interstate Properties*, 569 F.2d 1203, 1206 n.8 (3d Cir. 1977). *Cf. King v. United Commercial Travelers*, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948).[3]

In *Volpe*, Judge Takiff considered arguments made by plaintiffs, identical to arguments made here, that the Pennsylvania statute of limitations should not be deemed to run against plaintiffs afflicted by asbestosis and related diseases, until they became aware of their legal claims and the identities of asbestos suppliers. *Volpe*, slip op. at 3. Judge Takiff began with an analysis of the awareness required by the statute, and he discerned three strands of "knowledge" which a plaintiff must have before the statute will run against him.[4] Not included, and, we agree, not required by Pennsylvania law was "subjective certainty of knowledge of a valid cause of action." *Volpe*, slip op. at 11.

Indeed, Judge Takiff wrote:

"Once [plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim. Postponing the commencement of the limitations period until he has actually done so would nullify the justifiable rationale of the statute of limitations and permit the prosecution of stale claims."

■ Certain plaintiffs have admitted that they consulted with lawyers after learning that exposure at the workplace caused asbestosis. We are urged to ignore the failure of these lawyers to advise their clients to bring timely actions.[5] Plaintiffs argue, in a circular way, that their diligence in seeking legal advice, and the apparent failure of their lawyers to advise them to file timely suits demonstrates that liability for such omissions was "a subtle concept in the law which was not even recognized by an attorney." Plaintiff DaMato's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 8. Neither the initial memoranda discussing summary judgment nor the supplemental memoranda filed pursuant to this Court's Order of August 13, 1980, suggest any authority or reasoning sufficiently persuasive to alter the logical conclusion this Court reaches, that an attorney's lack of knowledge or diligence will not shield his client from the operation of the statute of limitations. As the Supreme Court stated in *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979):

If [plaintiff] fails to bring suit because he is incompetently or mistakenly told he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying accrual of the claim until the plaintiff is otherwise informed, or himself deter-

---

**3.** The Supreme Court has held that federal courts are not *bound* by decisions of state trial courts, although their decision should be attributed some weight. *King v. United Comm. Travelers*, 333 U.S. 153, 160–161, 68 S.Ct. 488, 492, 92 L.Ed. 608 (1948). We note, however, that the Court's decision in that case was based in large part on the fact that the purposes of the *Erie* doctrine, *i. e.*, uniformity, would not necessarily be served by allowing the single state trial court decision to control a decision binding the entire federal court system for that state. Sitting as a trial court in the same region as the state tribunal from which the deci-

sion issued, we are not faced with such a dilemma.

**4.** "(1) knowledge of the *injury*; (2) knowledge of the *operative cause* of the injury's and (3) knowledge of the *causative relationship* between the injury and the operative conduct." *Volpe*, slip op. 4–5.

**5.** Significantly, in the cases of Saylor, DaMato, and Lindahl claims were promptly filed for workmen's compensation, and asbestos was explicitly stated to be the cause of claimants' injuries.

mines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

*Kubrick* at 123–124, 100 S.Ct. at 360.

In sum we conclude that when a plaintiff knows the cause and source of his injury, his lack of knowledge about the legal bases for a prospective claim will not toll the statute of limitations. In the context of these cases, when plaintiff knew or should have known that his injury was caused by exposure to asbestos, the statute began to run.

*Rulings*

A. *Grabowski*

The facts offered by defendants to show that plaintiff knew or should have known that he had been injured by exposure to asbestos do not rise to the level required to sustain their motion. Medical records do not establish what was communicated to plaintiff by doctors, and plaintiff's testimony is contradictory as to when he first knew that exposure to asbestos could harm him. Therefore, defendants' motion for summary judgment is denied.

B. *DaMato*

The undisputed facts show that plaintiff knew by 1976 that he had been injured by exposure to asbestos. Defendant's motion is therefore granted.

C. *Lindahl*

The undisputed facts show that decedent was aware that he had contracted asbestosis in 1972, and that at least by 1973 plaintiff was aware that decedent's death was caused by exposure to asbestos. Defendants' motion for summary judgment is therefore granted.

D. *Gravatt*

The undisputed facts do *not* disclose that plaintiff was aware of the cause of decedent's injury. Although the doctors' correspondence and records show cognizance of asbestos exposure, nothing on the record shows that anything other than the diagnosis of cancer was communicated to plaintiff. Defendants' motion for summary judgment is therefore denied.

E. *Marincola*

The undisputed facts reveal only that decedent died of cancer, and that plaintiff was told only that decedent died of lung cancer. Defendants' motion is therefore denied.

F. *Saylor*

The undisputed facts show that plaintiff knew in 1967 that decedent's death was caused by asbestosis, caused by exposure to asbestos. Defendants' motion for summary judgment is therefore granted.

G. *Pearson*

The undisputed facts show that plaintiff knew in 1973 that decedent had died as a result of cancer caused by contact with asbestos fibers. Defendants' motion for summary judgment is therefore granted.