Norma ANTHONY et al.

v.

ABBOTT LABORATORIES et al.

No. 84–87–Appeal.

Supreme Court of Rhode Island.

April 3, 1985.

John S. Foley, Mark Decof, Leonard Decof, Decof & Grim, Providence, for plaintiffs.

Dennis J. McCarten, Hanson, Curran & Parks, Edward L. Gnys, Jr., Gunning, La-Fazia & Gnys, Inc., John F. Dolan, Rice,

# 44

Dolan & Kershaw, Richard M. Borod, Edwards & Angell, William A. Curran, Hanson, Curran & Parks, Thomas D. Gidley, Hinckley & Allen, James J. McKenna, Bruce G. Tucker, Roberts, Carroll, Feldstein & Tucker, Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

The United States District Court for the District of Rhode Island has certified the following question of law concerning the statute of limitations applicable to personal-injury claims as contained in G.L.1956 (1969 Reenactment) § 9-1-14, as amended by P.L.1976, ch. 188, § 1:[1]

> "Did the limitations period for the purposes of the discovery rule adopted by Your Honors in *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968), and recently amplified in *Lee v. Morin*, [RI, 469 A.2d 358 (1983)] begin to run when the plaintiffs in this action knew or should have known of their injuries and a possible casual relationship between those injuries and ingestion of or exposure to diethylstilbestrol (DES) *in utero*, or did the limitations period begin to run only when the plaintiffs also knew or should have known of the alleged wrongful conduct of the manufacturers of the drug?"

This case is a personal-injury action for compensatory and punitive damages against several manufacturers of the drug diethylstilbestrol (DES) based upon negligence, breach of warranty, res ipsa loquitur and strict product liability. The plaintiffs filed suit in the United States District Court for the District of Rhode Island on November 5, 1980.

The parties are not contesting the facts, and they are relevant only to the question that is submitted to this court.

The plaintiffs in this action allege that they have suffered physical injury as the result of ingestion of or exposure *in utero* to DES. DES is a synthetic hormone that was marketed by drug companies and widely prescribed by physicians for a number of purposes, one of which was to prevent miscarriages.

The plaintiffs include eleven daughters who allege that they have suffered physical injury as the result of exposure to DES *in utero* and one mother who alleges that she has suffered physical injury as the result of ingestion of DES. With respect to each of these plaintiffs: (1) more than three years elapsed between the allegedly injurious exposure to the product and the institution of this civil action and (2) more than three years elapsed between plaintiff's eighteenth birthday and the institution of the lawsuit. Each of these plaintiffs became aware more than three years prior to filing suit that she had physical injuries and that those injuries were possibly caused by exposure to DES. Eleven of the twelve plaintiffs in question have filed affidavits in which they state that they had no knowledge of any actionable conduct on the part of defendants at any time more than three years prior to suit.

On January 31, 1984, defendants (excluding defendant Burroughs & Wellcome, Inc.) jointly filed a motion for summary judgment based upon the statute of limitations § 9-1-14. However, the trial justice determined that the issue required an interpretation of Rhode Island law and thereupon certified the question to this Court.

The issue raised by this case is whether the statute of limitations begins to run in a drug product-liability action when the plaintiff discovers the personal injuries and its cause or when plaintiff discovers or should have discovered knowledge of defendant manufacturer's wrongful conduct.

---

1. This action is governed by the statute of limitations pertaining to personal-injury claims contained at G.L. 1956 (1969 Reenactment) § 9-1-14, as amended by P.L.1976, ch. 188, § 1. It provides, "Actions for injuries to the person shall be commenced and sued within three (3) years next after the cause of action shall accrue, and not after."

The defendants contend that the cause of action "accrues" when the injured person knew of her injury and the cause of the injury. They argue that when the plaintiff discovers that the product caused her injuries, the statute of limitations would begin to run.

In turn, plaintiffs argue that before the statute begins to run, there must be some knowledge by the plaintiff of wrongful conduct on the part of the drug manufacturer.

This court has, in certain cases and circumstances in the past, rejected the general rule that a cause of action accrues at the time of the injury. *See Lee v. Morin*, R.I., 469 A.2d 358 (1983); *Romano v. Westinghouse Electric Co.*, 114 R.I. 451, 336 A.2d 555 (1975); *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968).

In *Wilkinson*, we held that in medical-malpractice suits the statute of limitations does not commence to run until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered that she has sustained an injury as a result of the physician's negligent treatment. In adopting the so-called discovery rule, the court concluded that "we prefer to follow the discovery rule in medical malpractice cases because in our opinion the theory behind it is eminently fair and perfectly consistent with the function and nature of limitation acts." *Wilkinson*, 104 R.I. at 239, 243 A.2d at 753.

This court noted that the statute's purpose of "prevent[ing] the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard for want of seasonable prosecution," *Id.* at 236, 243 A.2d at 752, would not be defeated by allowing the plaintiff in a medical-malpractice action to bring suit after she has an opportunity to discover the nature of her injuries, rationalizing that it would be "manifestly unjust to bar the enforcement of injury claims brought by a plaintiff who was not, nor could not have known that he was, the victim of tortious conduct because the consequent harm was unknowable within two years of the negligent act." *Id.* at 237, 243 A.2d at 752.

More recently, we applied this principle in *Lee v. Morin*, R.I., 469 A.2d 358 (1983), with respect to improvements to real property, holding that the statute of limitations begins to run "when the evidence of injury to property, resulting from the negligent act upon which the action is based, is sufficiently significant to alert the injured party to the possibility of a defect." *Id.*, 469 A.2d at 360.

The reasoning behind *Wilkinson* and *Lee* is that a person should have reasonable opportunity to become cognizant of an injury and its cause before the statute of limitations begins to run. *Id.*, 469 A.2d at 361. *See Kennedy v. Cumberland Engineering Company Inc.*, R.I., 471 A.2d 195 (1984).

We believe that this same explanation applies to a drug product-liability action in situations in which the adverse effects of the ingestion of a drug take several years and possibly a generation to manifest themselves. Moreover, we recognize the similarity in circumstances between a medical-malpractice case and a drug product-liability action. In *Raymond v. Eli Lilly & Co.*, 412 F.Supp. 1392 (D.N.H.1976), *aff'd*, 556 F.2d 628 (1st Cir.1977), the court, in comparing drug product cases with malpractice cases, clearly stated:

"Plaintiff's situation is not unlike that of the malpractice victim, and a drug can be likened to a hidden instrument left in the body of an unsuspecting patient. Both suffer the onset of physical harm a considerable period of time prior to the discovery of the alleged cause of that harm, and both the malpractice victim and the victim of drug side-effects may be unaware for some time they are suffering an invasion of a protected interest." 412 F.Supp. at 1401.

The same considerations that support the adoption of the discovery rule in medical-malpractice cases apply *a fortiori* to the drug product-liability field. *See McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, (Cir.1980) (applying Ohio law); *Louis-*

*ville Trust Company v. Johns Mansville Products Corp.*, 580 S.W.2d 497 (Ky.1979); *Raymond v. Eli Lilly and Company*, 117 N.H. 164, 371 A.2d 170 (1977); *Ohler v. Tacoma General Hospital*, 92 Wash.2d 507, 598 P.2d 1358 (1979). It is our judgment that the suppression of the running of the statute of limitations in such cases will not frustrate achievement of the statute's purpose of "prevent[ing] the unexpected enforcement of stale claims * * *." *Wilkinson v. Harrington*, 104 R.I. at 226, 243 A.2d at 752.

The "rule" in *Wilkinson* provides that in medical-malpractice suits "the statute of limitation does not commence until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that he has sustained an injury as a result of the physician's negligent treatment". *Id.* at 234, 243 A.2d at 751. The facts in *Wilkinson* indicate that the victim discovered both the cause of her injury and the fact that it was the result of tortious conduct simultaneously.

In the present case, however, the injury, its cause, and plaintiffs' knowledge of the manufacturer's wrongful conduct occurred at three substantially different times. In such a circumstance, some jurisdictions have held that the cause of action does not accrue until plaintiffs learn or reasonably should have learned of the injury and of a possible causal connection between the injury and the product. *Fidler v. Eastman Kodak Co.*, 714 F.2d 192 (1st Cir.1983); *see Timberlake v. A.H. Robins Co.*, 727 F.2d 1363 (5th Cir.1984); *Grabowski v. Turner & Newall*, 516 F.Supp. 114 (E.D.Pa.1980) *aff'd sub nom. DaMato v. Turner & Newall Ltd.*, 651 F.2d 908 (3rd Cir.1981); and *Pauley v. Combustion Engineering Inc.*, 528 F.Supp. 759 (S.D.W.Va.1981).

However, in what we see as an emerging trend, several courts have concluded that the plaintiff should have knowledge of some wrongdoing by the drug manufacturer before the statute begins to run under a discovery rule. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3rd Cir.1976), *cert.*

*denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Schenebeck v. Sterling Drug, Inc.*, 423 F.2d 919 (8th Cir.1970); *Raymond v. Eli Lilly & Co.*, 117 N.H. 164, 371 A.2d 170 (1977).

*Dawson v. Eli Lilly & Co.*, 543 F.Supp. 1330 (D.D.C.1982), presented facts similar to those in the instant case. In considering the issue that court held:

"Where the injury is latent, the claim is held not to accrue until the plaintiff discovers the injury. Where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing." *Id.* at 1338.

*See, e.g., Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 378 A.2d 1138 (1977); *Lynch v. Rubacky*, 85 N.J. 65, 424 A.2d 1169 (1981); *Hoffman v. Rockey*, 55 Or.App. 658, 639 P.2d 1284, *reh'g. denied*, 292 Or. 722, 644 P.2d 1131 (1982); *Foil v. Ballinger*, 601 P.2d 144 (Utah 1979); *Ohler v. Tacoma General Hospital*, 92 Wash.2d 507, 598 P.2d 1358 (1979).

We are convinced, after reviewing the case law and weighing the equitable considerations, that the better view would be to adopt the following rule: in a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer.

We arrive at this conclusion by a conscious balancing of policies. We weigh the policy of eliminating the unexpected enforcement of stale claims with the opportunity of a person to have her day in court to vindicate those rights that have been violated but have remained undiscovered or un-

discoverable. *Von Villas v. Williams,* 117 R.I. 309, 314, 366 A.2d 545, 549 (1976). *See Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968).

■ We have previously said that "the policy behind a statute of limitations is to prevent a plaintiff from gaining an unfair advantage by carelessly or willfully sleeping on [her] rights * * *." *Romano v. Westinghouse Electric Co.,* 114 R.I. at 461, 336 A.2d at 560. However, in situations in which the plaintiff is unaware that her legal rights have been infringed, she cannot be said to be "sleeping on her rights." As we said in *Wilkinson:*

> "To construe the statute narrowly so as to preclude a person from obtaining a remedy simply because the wrong of which he was the victim did not manifest itself for at least two years from the time of the negligent conduct, is clearly inconsistent with the concept of fundamental justice. To require a man to seek a remedy before he knows of his rights, is palpably unjust." 104 R.I. at 238, 243 A.2d at 753.

■ In the case of a drug product, it cannot be thought that because a person experiences the adverse effect of a particular drug, she will or should assume that it was the result of wrongful conduct on the part of the manufacturer; the normal reaction would be otherwise.[2]

> "Such a person may assume that the result suffered is an unavoidable risk of a treatment, which because of the treatment's general efficacy, is considered acceptable by medical standards, or that it is simply an unforeseeable consequence beyond anyone's control or responsibility." *Dawson v. Eli Lilly & Co.,* 543 F.Supp. at 1337.

It is only later when a person learns that such effects are not an expected or predictable consequence of proper treatment that she can possibly be aware that she has an actionable claim against the manufacturer. *See, e.g., Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919 (8th Cir.1970).

We do not believe that the prejudice to defendant drug companies is significant in this case. It should be foreseeable to the drug companies that if they put a product on the market that has harmful consequences, its effects will take some time to manifest themselves. They should also be aware that there may be an additional period of time before the injured person learns that her injury was the result of wrongful conduct on the part of the manufacturer. *See Raymond v. Eli Lilly & Co.,* 117 N.H. at 174, 371 A.2d at 176.

There is also little danger that the extension of the statute of limitations in this type of action would "force an unfresh claim against a party who is left to shield himself from liability with nothing more than tattered or faded memories, misplaced or discarded records, and missing or deceased witnesses." *Wilkinson v. Harrington,* 104 R.I. at 236, 243 A.2d at 752.

> "Most of the evidence necessary to prove or defend against liability is likely to be documentary in nature. It is not the kind of evidence that is lost or becomes unreliable as time passes. Companies generally compile and maintain research records that document the extent of their knowledge of the harmful propensities of their drugs. Certainly, doctors and hospitals meticulously maintain and store records of patient treatments. Note, *Recent Developments in Wisconsin in Medical Malpractice Law,* 1974 Wis.L.Rev. at 897." *Raymond v. Eli Lilly & Co.,* 117 N.H. at 174, 371 A.2d at 176.

We believe that because this product usually affects a different generation from that which received the product, plaintiffs and not defendants would be most prejudiced by faded memories, misplaced records, or deceased witnesses. Address-

---

**2.** Certainly, there would be occasions when a disastrous reaction to a particular drug should alert any reasonable person to the wrongful conduct on the part of the drug manufacturer. This would be a question of fact.

ing this issue in *Lee v. Morin,* 469 A.2d at 360, this court stated, "[i]t should be remembered that it is the plaintiff who must sustain the burden of proof. A loss or destruction of evidence, or the dimming of a witness's memory, will only make upholding the burden that much more difficult."

In extending the discovery rule in drug product-liability actions until the plaintiff discovers or in reasonable diligence should have discovered the manufacturer's wrongful conduct, we believe such a rule will encourage manufacturers to be more thorough in their testing before a product is placed on the market. If the manufacturers recognize that they will be subject to potential liability for a longer period after a product is linked to harmful effects, perhaps they will spend more time in the laboratory testing the product before it is marketed.[3]

Also, in forming a discovery rule that requires knowledge of wrongdoing, we feel that manufacturers acting in their own self-interest may take steps to begin the statute of limitations running and limit their liability by publicizing the effects of any product they manufactured that is linked to harmful effects. In this way, members of the public will be informed earlier and may be able to take action before their condition becomes severe.

Moreover, the rule requires reasonable diligence in discovering the wrongful conduct on the part of the manufacturer. Therefore, the statute shall start running when a reasonable person in circumstances similar to plaintiffs' would have discovered a defendant's wrongful conduct. *See* Note, *Application of the Pennsylvania Statute of Limitations Discovery Rule in DES Cases,* 55 Temp.L.Q. 1149, 1168 (1982). The plaintiff's conduct in discovering her cause of action will be judged by an objective as well as a subjective standard. If the factfinder determines that the plaintiff

did not exercise reasonable diligence, or that a reasonable person in similar circumstances would have discovered the wrongful conduct of the defendant at an earlier date than the plaintiff did in fact discover this conduct, then the earlier date will be used to start the statute running. This objective component of the discovery rule will ensure that foot dragging is neither encouraged nor rewarded.

■ The defendants finally argue that the statute would never run under this rule because a determination of wrongful conduct is not made until trial. We do not believe this to be the case. The plaintiff does not have to be aware of all the elements of her legal cause of action before the statute begins to run. She has to have "some awareness, or imputed awareness, that her injuries were the result of some wrongdoing on the part of defendants." *Dawson v. Eli Lilly & Co.,* 543 F.Supp. at 1339.

We thus answer the certified question by concluding that in drug product-liability cases a cause of action does not accrue until the plaintiff knows, or should reasonably know, of the alleged wrongful conduct of the manufacturer.

WEISBERGER, Justice, dissenting.

The majority has been persuaded by what it deems an emerging trend to interpret the statute of limitations applicable to personal injury as contained in G.L.1956 (1969 Reenactment) § 9-1-14, as amended by P.L.1976, ch. 188, § 1, as requiring a three-pronged test in product liability actions. This test requires three elements:

1. That the plaintiff has learned or reasonably should have learned of the injury;

2. That the plaintiff has learned or reasonably should have learned of a possible

---

**3.** Although it may be argued that the imposition of potential liability on defendant in this case would discourage drug manufacturers from producing or advancing other types of drugs in the future, we believe the more enlightened

view is that this sort of liability will encourage drug companies to produce and market *safe* drugs. *See Collins v. Eli Lilly Co.,* 116 Wis.2d 166, —— n. 11, 342 N.W.2d 37, 49–50 n. 11 (1984).

causal connection between the injury and the product;

3. That the plaintiff has learned or should have learned of some wrongdoing by the drug manufacturer.

I am of the opinion that in product liability cases involving drug manufacturers, the statute of limitations should begin to run when the plaintiff either has knowledge or in the exercise of reasonable diligence should have knowledge of the first two elements set forth above, namely, knowledge of the injury and knowledge of a possible causal connection between the injury and the product. The requirement that the plaintiff have knowledge of wrongdoing or culpability on the part of the drug manufacturer in effect would subvert the entire purpose of a statute of limitations. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *Timberlake v. A.H. Robins Co.,* 727 F.2d 1363 (5th Cir.1984); *Fidler v. Eastman Kodak Co.,* 714 F.2d 192 (1st Cir.1983).

In *United States v. Kubrick,* the Supreme Court considered when the statute of limitations in respect to the Federal Tort Claims Act, 28 U.S.C.A. § 2401(b) (1978), should begin to run in respect to a malpractice action. In that case a veteran had been treated for an infection of the right femur with an antibiotic (Neomycin). In January 1969 Kubrick discovered that he had suffered a hearing loss as a result of the Neomycin treatment administered at the hospital. He did not discover that the Neomycin had been negligently administered until 1971. The District Court and the Court of Appeals for the Third Circuit held that even though a plaintiff is aware of his injury and of the causal connection between the injury and the treatment, the statute of limitations does not run when the plaintiff shows that he did not know, nor should he have known, facts that would have alerted a reasonable person to the possibility that the treatment was improper. On certiorari the Supreme Court of the United States reversed with the following comments:

"We disagree. We are unconvinced that for statute of limitations purposes a plaintiff's ignorance of his legal rights and his ignorance of the fact of his injury or its cause should receive identical treatment. That he has been injured in fact may be unknown or unknowable until the injury manifests itself; and the facts about causation may be in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain. The prospect is not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of the latter. There are others who can tell him if he has been wronged, and he need only ask. If he does ask and if the defendant has failed to live up to minimum standards of medical proficiency, the odds are that a competent doctor will so inform the plaintiff." *Kubrick,* 444 U.S. at 122, 100 S.Ct. at 359, 62 L.Ed.2d at 269.

I am persuaded by the reasoning in *Kubrick.* As Justice White set forth in the majority opinion, statutes of limitation represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time. Furthermore, the right to be free of stale claims in time comes to prevail over the right to prosecute them. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944). He went on to suggest that a plaintiff who was armed with the facts about the harm done to him and the cause of such harm can protect himself by seeking advice in the medical and legal communities. "To excuse him from promptly doing so by postponing the accrual of his claim [until he is competently advised concerning the wrongdoing of the defendant] would undermine the purpose of the limitations statute * * *." *Kubrick,* 444 U.S. at 123, 100 S.Ct. at 360, 62 L.Ed.2d at 270.

The majority's three-pronged test is doubtless intended to apply only in such

complex cases as product liability and medical malpractice actions. However, the complexity of the case should not be allowed to blur or dilute the logical principles underlying a statute of limitations. Similar arguments concerning negligence or culpability might be made in respect to a simple case in which the action would normally accrue at the time of the injury.

For example, let us assume that a plaintiff slips and falls on business premises because of the presence of a substance on the floor of such premises. The plaintiff would immediately have notice of the injury and of the possible connection between the injury and the foreign substance on the floor. However, the plaintiff might not have knowledge of the liability of the defendant owner of the premises for a considerable period thereafter. Such liability would be predicated on negligence. Negligence would consist not only of the knowledge by agents of the defendant that a foreign substance might be on the floor of the business premises but also upon the period of notice of the presence of such substance and the opportunity to have removed the same prior to the plaintiff's fall. It may well be that if a plaintiff consulted certain attorneys for advice on this matter, he might be told that the absence of evidence of the duration of the presence of this substance would defeat his claim. Other attorneys might well take a different view. However, it has never been suggested until now that the statute of limitations would not begin to run in respect to such an injury until the plaintiff had received proper advice concerning the liability of the defendant. I would caution the majority that its adoption of the three-pronged test may well be the basis for arguments in the future that such a test should be applied to less complex but debatable personal injury liability cases. Such a development would certainly dilute the effectiveness of the statute of limitations.

I am thus unwilling to take the first step down a road that may lead to results that could preserve stale claims of every nature until such time as a plaintiff has received appropriate advice on the issue of liability.

For the foregoing reasons, I respectfully dissent from the answer given to the certified question by the majority.