### Barbara NICOLO

v.

## PHILIP MORRIS, INC., Liggett Group, Inc., and Liggett & Meyers, Inc.

### No. 96–528–T.

United States District Court, D. Rhode Island.

March 2, 1999.

Ralph R. Ryan, Pawtucket, RI, Stephen R. White, Warwick, RI, for Barbara F. Nicolo, plaintiff.

David A. Wollin, Adler Pollock & Sheehan, Providence, RI, Robert N. Driscoll, Thomas J. Griffin, Jr., Goodwin, Procter & Hoar, Boston, MA, for Philip Morris, Inc., defendant.

Barbara S. Cohen, Goldenberg & Muri, Providence, RI, Douglas J. Emanuel, Tillinghast Licht & Semonoff, Providence, RI, Michael M. Fay, Aaron H. Marks, Kasowitz, Benson, Torres & Friedman, LLP, New York City, for Liggett Group, Inc., Liggett & Myers, Inc., defendants.

### MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TORRES, District Judge.

Barbara Nicolo brought this action seeking damages for personal injuries allegedly sustained as a result of smoking cigarettes manufactured by the defendants. The defendants, Philip Morris, Inc., ("Philip Morris"), Liggett Group, Inc. and Liggett & Meyers, Inc., (jointly referred to as "Liggett") have moved for summary judgment asserting that this action is barred by the statute of limitations.

The issues presented are whether Nicolo's cause of action "accrued" more than three years before this suit was commenced; and, if so, whether the three-year statute of limitations was "tolled" by what Nicolo alleges was the defendants' fraudulent concealment of the existence of her cause of action. Because the undisputed evidence establishes that, more than three years before this action was commenced, Nicolo was both injured and well aware that her injuries probably were attributable to smoking the defendants' cigarettes, the motions for summary judgment are granted.

#### Background

Nicolo began smoking cigarettes in 1949, when she was fifteen years of age. Initial-

ly, she smoked Chesterfield's, manufactured by Liggett; and, later, switched to Marlboro's, manufactured by Philip Morris. Despite numerous admonitions from her mother, husband and doctors; and, despite the fact that Nicolo attributed her mother's asthma and emphysema conditions to smoking, Nicolo was unable to "kick the habit."

By the late 1970's, Nicolo began having difficulty breathing that her doctors told her was caused by smoking. Eventually, she began taking medication to alleviate her symptoms. On two occasions in the early 1980's, she also had surgery to remove polyps from her vocal chords that her doctors attributed to smoking.

In 1988, Nicolo was diagnosed as suffering from asthma, emphysema and chronic obstructive pulmonary disease ("COPD") that her doctors, once again, told her were attributable to smoking. Shortly thereafter, she had an apparent heart attack and became totally disabled. Unfortunately, Nicolo was unable to quit smoking until November 1993, when she was diagnosed as suffering from lung cancer.

Nicolo's amended complaint includes claims based upon strict liability, negligence and breach of implied warranty. It also asserts a claim for fraudulent misrepresentation based upon allegations that the defendants denied the addictive nature of nicotine and the harmful effects of smoking and that they deliberately suppressed information to the contrary.

### The Summary Judgment Standard

Fed.R.Civ.P. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In determining whether a genuine dispute of material fact exists, the Court must view the evidence in the light most favorable to the non-moving party and it must draw all reasonable inferences in that party's favor. *United States v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir. 1992).

When a motion for summary judgment is directed against a party that bears the burden of proof, the movant may make an initial showing of entitlement to summary judgment by producing evidence that negates an essential element of the non-movant's case or by demonstrating an absence of record evidence to support the non-movant's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir .1997). The non-movant then has the burden of demonstrating the existence of a genuine issue of material fact requiring a trial. *Dow v. United Bhd. of Carpenters and Joiners,* 1 F.3d 56, 58 (1st Cir.1993).

### *Discussion*

I. *Accrual of Plaintiff's Cause of Action*

Since this is a diversity case in which the plaintiff is asserting only state law claims, the timeliness of her suit is governed by Rhode Island's statute of limitations.

R.I.Gen.Laws § 9–1–14(b) requires a cause of action for personal injury to be brought within three years "after the cause of action shall accrue." Personal injury claims brought more than three years after accrual are barred regardless of the legal theory upon which recovery is sought. *See Renaud v. Sigma–Aldrich Corp.,* 662 A.2d 711, 714 (R.I.1995) (applying three-year statute of limitations to product liability action alleging both negligence and breach of warranty); *Pirri v. Toledo Scale Corp.,* 619 A.2d 429, 430–31 (R.I.1993).

Ordinarily, a cause of action for personal injury is deemed to accrue at the time the injury occurs. *See Renaud,* 662 A.2d at 714; *Von Villas v. Williams,* 117 R.I. 309, 366 A.2d 545, 548 (1976). However, the Rhode Island Supreme Court has

held that, in medical malpractice cases, a cause of action does not accrue until "the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered" that he or she was injured as a result of the defendants' treatment. *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745, 751 (1968). The rationale for applying the "discovery rule" in such cases is that it is difficult to determine whether one has been injured during the course of medical treatment or whether one, merely, is experiencing the normal consequences of that treatment. Rhode Island utilizes a similar rationale in applying the "discovery rule" to claims for injury to real property allegedly arising from latent construction defects that do not immediately manifest themselves. *See Lee v. Morin,* 469 A.2d 358, 360 (R.I.1983).

In *Anthony v. Abbott Lab.,* 490 A.2d 43 (R.I.1985) the Court went a step further and held that, in drug product liability cases, a cause of action does not accrue until the plaintiff knows or should have known; not only, that he was injured by the drug; but also, that the injury resulted from the manufacturer's wrongful conduct. *See id.* at 46. In requiring knowledge of culpability, the *Anthony* Court reasoned that a person who experiences adverse effects from taking a drug is likely to assume that such effects are an unavoidable side effect of treatment and may not recognize that they are attributable to a defect for which the manufacturer is culpable. *See id.* at 47. However, the Rhode Island Supreme Court has declined to extend the rule in *Anthony* to non-drug cases out of apparent concern that doing so would subvert the purpose of the statute of limitations. *See Benner v. J.H. Lynch & Sons, Inc.,* 641 A.2d 332, 337 (R.I.1994).

 In *Arnold v. R.J. Reynolds Tobacco Co.,* 956 F.Supp. 110 (D.R.I.1997), after a thorough and thoughtful analysis, Judge Lagueux concluded that "the accrual of a cigarette product liability action is more akin to that of a latent injury case such as *Wilkinson* or *Lee* than to that of a drug product liability action [such as *Anthony* ]." *Id.* at 115. Accordingly, he held that, in cigarette product liability cases, a cause of action accrues when the plaintiff learns or should have learned that he was injured and that the injury likely resulted from smoking even though the plaintiff may have been unaware of the precise nature of the defendant's wrongful conduct. *See id.* This Court concurs in that holding.

 Nicolo seeks to avoid application of this rule by characterizing the ill effects she experienced from smoking as separate and discrete injuries. Thus, she contends that her action is timely because the diagnosis of lung cancer was not made until November of 1993, less than three years prior to commencement of suit.

Nicolo cites no authority for the proposition that a new cause of action accrues each time the injury sustained by a plaintiff manifests itself in a different way. On the contrary, courts generally have rejected that notion and have held that the statute of limitations begins to run at the time of the initial injury even though the full magnitude of the harm did not become apparent until later. *See, e.g., Nelson v. American Nat'l Red Cross,* 26 F.3d 193, 196–97 (D.C.Cir.1994) (cause of action for receiving blood tainted with HIV accrues when patient is tested positive for HIV and not later when patient develops AIDS); *Gagnon v. G.D. Searle & Co.,* 889 F.2d 340, 343 (1st Cir.1989) ("Even though in March 1980 Gagnon did not know with certainty the cause of her injuries or the full extent thereof, she clearly knew then that she was injured and that the injuries may have been caused by the Cu–7 [intrauterine contraceptive device]; under New Hampshire's discovery rule, that knowledge is sufficient to trigger the statute of limitations."); *Joyce v. A.C. & S., Inc.,* 785 F.2d 1200, 1203–05 (4th Cir.1986) (cause of action for asbestos related injuries accrued outside of limitations period when plaintiff suffered from pleural thickening, even

though plaintiff developed pleural effusion and parenchymal asbestosis within the limitations period).

There may be a basis for arguing that a new cause of action accrues upon manifestation of a separate and distinct injury that is unrelated to the initial injury and could not have been anticipated as a consequence of that injury. However, even if that argument has merit, it does not assist the plaintiff in this case. Nicolo's initial injury and all of its sequelae consist of impairments to and diseases of her respiratory system. By the early 1980's, she was on notice that smoking was the likely cause of her breathing difficulties and the polyps that had to be surgically removed from her vocal chords. By 1989, she had become totally disabled by asthma, emphysema and COPD, all of which doctors told her were attributable to smoking. In light of those facts, the development of lung cancer was a readily foreseeable, if not inevitable, consequence of her initial injury and continued smoking. Therefore, her cause of action clearly had accrued at that time.

## II. *Fraudulent Concealment*

■ R.I.Gen.Laws § 9–1–20 tolls the statute of limitations when a defendant fraudulently conceals "the existence of the cause of action" and provides that, in such cases, the cause of action does not accrue until the plaintiff "shall first discover its existence." Nicolo argues that, because the defendants allegedly made false representations that nicotine was not addictive and that cigarette smoking was not harmful to human health and because they deliberately suppressed information to the contrary, the statute of limitations on her claim was tolled until the deception was discovered.

However, even assuming *arguendo* that those allegations are true, the defendants'

1. The alleged misrepresentations regarding the addictive nature of nicotine very well might negate the defense of assumption of risk on the theory that the plaintiff, once

duplicity did not conceal the existence of Nicolo's cause of action. Like the plaintiff in *Arnold,* Nicolo knew, more than three years before commencing this suit, "that [she] was addicted to cigarettes, and knew that [her] injuries were caused by [her] use of cigarettes." *Arnold,* 956 F.Supp. at 116. Thus, any misrepresentations by the defendants, however deplorable, did not prevent Nicolo from discovering the existence of her cause of action.[1] *See Smith v. O'Connell,* 997 F.Supp. 226, 240 (D.R.I. 1998) ("Accrual or the existence of a cause of action is not deferred until a plaintiff learns of all the facts that may be helpful in proving his or her claim.").

### Conclusion

For all of the foregoing reasons, the defendants' motions for summary judgment are granted.

IT IS SO ORDERED.

addicted, no longer "voluntarily" assumed that risk. However, it had no bearing on the plaintiff's ability to recognize the existence of her cause of action.