[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Defendant Wyeth, Inc. ("Wyeth"), formerly known as American Home Products Corp., moves this Court for summary judgment against the Plaintiff, Cathy McKeen ("McKeen"), on grounds that McKeen's product liability claim is barred by the three year statute of limitations provided at G.L. 1956 §9-1-14.1. McKeen objects, contending that there are issues of material fact as to when her cause of action accrued. Jurisdiction is pursuant to R.I. Super. Ct. R. Civ. P. 56.
 STANDARD OF REVIEW
Summary judgment "is a harsh remedy and must be applied cautiously."Avco Corp. v. Aetna Casualty Surety Co., 679 A.2d 323 (R.I. 1996) (quoting Mallette v. Children's Friend and Svc., 661 A.2d 67, 69 (R.I. 1995)). In ruling on a motion for summary judgment the trial justice examines the pleadings, depositions, answers to interrogatories, admissions on file and affidavits of the parties to determine whether the evidence presents a genuine issue of material fact. Volino v. GeneralDynamics, 539 A.2d 531, 532-33 (R.I. 1988). A party who opposes such a motion must not rely solely on pleadings but must assert facts that raise a genuine issue to be resolved. Id. The trial justice must "view the evidence in a light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in support of the non-moving party's claim but without resolving the facts."Holliston Mills, Inc. v. Citizens Trust Co., 604 A.2d 331, 334 (R.I. 1992). If no issues of material fact exist, then the trial justice must determine whether the moving party is entitled to judgment as a matter of law. Id. (citing Rustigian v. Celona, 478 A.2d 187, 189 (R.I. 1984)).
 ANALYSIS
McKeen suffered a hemorrhagic stroke on October 1, 1997. She subsequently filed a lawsuit against the Defendants in June of 2002, alleging that the Defendants' product, Robitussin CF®, which contained phenylpropanolamine ("PPA"), caused the stroke, and claiming that the Defendants knew or should have known of the risks posed by PPA and failed to warn her of them. The Defendants claim that McKeen became aware of a possible connection between her stroke and PPA in or before October of 1998, at which time her cause of action accrued. Thus, they argue, by filing her suit more than three years after October of 1998, as required by § 9-1-14.1, she filed out of time.
Whether a statute of limitations has run is a factual question that must be determined by a jury if in dispute. Dionne v. Baute, 589 A.2d 833,935 (1991) ("when the evidence raises factual questions involving the statute of limitations, such questions should be submitted to the jury"). In a product liability suit involving injury caused by a drug, "where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time," the Rhode Island Supreme Court has held that "the running of the statute of limitations . . . begin[s] when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." Anthony v. Abbott Laboratories,490 A.2d 43, 46 (R.I. 1985).
The Supreme Court has specifically rejected arguments that the cause of action should instead accrue when the plaintiff has learned or reasonably should have learned of a possible causal connection between the injury and the product in these types of cases. See id. at 44, 48-49 (Weisberger, J., dissenting). In so deciding, the Supreme Court reasoned that the policy of barring stale claims was outweighed by the policy of allowing those whose rights have been violated, though the violation was undiscovered or undiscoverable, to seek vindication in a court of law.Id. at 46. The liberality of this rule is tempered by the requirement that the plaintiff exercise due diligence in discovering the wrongful conduct on the part of the manufacturer. Id. at 48. A plaintiff's fulfillment of this duty is to be judged both subjectively and objectively; that is, if a factfinder were to determine that a plaintiff did not exercise reasonable diligence, or if a factfinder were to find that a reasonable person, similarly situated, would have discovered a defendant's wrongful conduct at an earlier date, that earlier date would serve as the time of accrual of the plaintiff's action. Id.
In the present case, the Defendants have not disputed that the manifestation of the Plaintiff's injury, the cause of her injury, and her knowledge of the wrongdoing by the manufacturer occurred at different points in time. Therefore, the discovery rule as set forth by our Supreme Court in Anthony must be applied.
The parties do not differ as to the factual background. The Plaintiff had been known to take Robitussin for cold symptoms prior to suffering a stroke on October 1, 1997. She was treated for her stroke at Miriam Hospital, where she remained until October 29, 1997. McKeen was then transferred to Braintree Rehabilitation Hospital, where she stayed until December 14, 1997. Later McKeen was transferred to Spaulding Rehabilitation Hospital in Boston, where she remained until March 14, 1998. At that time, McKeen returned to her home in Providence. McKeen's daughters cared for her until Earl Moul, Jr. ("Moul"), according to his deposition and records from PARI Independent Living Center, became her personal care attendant on February 17, 1999. The Defendants contend that the Plaintiff's cause of action accrued no later than October of 1998. They point to deposition testimony of a friend of McKeen's, Marc St. George ("St. George") indicating that he had learned from his wife, some time after McKeen's stroke, that PPA could be a cause of stroke. He testified that he later found a website indicating Robitussin contained PPA, and the risks of PPA. St. George "guessimated" that he relayed this information to Moul possibly within the first year after McKeen's stroke. Moul testified in a deposition that at some later date, he saw a website containing similar information on McKeen's computer, at the plaintiff's request. At this point, the defendants argue, McKeen's cause of action accrued because she had knowledge of a possible connection between her use of Robitussin and her stroke.
The Plaintiff challenges this timeline. McKeen asserts that the evidence indicates a much later date at which she became aware of the connection between PPA and strokes. Although St. George was not able, in his deposition, to provide a precise date for the conversation he had with Moul about PPA, he did testify that it took place after Moul began working as McKeen's personal care attendant, on February 17, 1999. Moul agreed with this account in his deposition, and added that the conversation took place after McKeen had acquired a computer. Shawna Lawton ("Lawton"), McKeen's daughter, testified that McKeen did not have a computer until after Lawton's August, 2000 wedding. McKeen testified in a deposition that the only avenue by which she received knowledge of a possible connection between her stroke and PPA and/or Robitussin was via her own computer. She further stated that she found her attorneys' website, which contained information on PPA, around this time and some time thereafter contacted their office. A paralegal for McKeen's attorneys stated in an affidavit that her law firm had posted PPA information on its website on or about November 6, 2000. She further stated that her firm had received a website lead from McKeen on January 31, 2001, and that that was McKeen's first contact with her firm. The Plaintiff thus asserts that, at best, Wyeth can show that a conversation regarding PPA took place between St. George and Moul after February 17, 1999, while Moul was working for McKeen. McKeen further asserts that the evidence she has produced in objecting to the Defendants' motion indicates that McKeen learned about a possible connection between PPA and stroke, at the earliest, in September of 2000, when she acquired her computer. Thus, the Plaintiff asserts that she was well within the three year statutory period when she filed suit in June of 2001.
Viewing the evidence in a light most favorable to the Plaintiff,Rustigian v. Celona, 478 A.2d 187, 189 (R.I. 1984), this Court finds that there is a factual dispute as to when and from whom McKeen learned of a possible causal connection between ingesting the Defendants' product containing PPA and her stroke. More importantly, the Defendants have produced no evidence indicating that McKeen knew or should have known of the Defendants' alleged wrongdoing, which, under the holding in Anthony,
ultimately triggers the statute of limitations to commence running.Anthony, 490 A.2d at 46; see also Zuccolo v. Blazar, 694 A.2d 717,718 R.I. 1997) (determining that where a plaintiff began taking a particular drug in 1985, a cause of action for medical malpractice against prescribing and treating physicians did not accrue until 1988 when the plaintiff, suspecting a connection between his joint pain and the drug, received a fourth opinion in 1988, confirming his suspicion). Here, the Plaintiff has come forward with evidence that she learned of the possible connection within three years before filing her suit; it is a logical inference that she could have learned of any alleged wrongdoing on Defendants' part only after that event. This factual dispute merits consideration by a finder of fact.
 CONCLUSION
After reviewing the pleadings, depositions, admissions on file and affidavits of the parties, and viewing the same in a light most favorable to the nonmoving party McKeen, this Court concludes that material issues of fact exist. Accordingly, Defendants' Motion for Summary Judgment is denied. Counsel shall submit an appropriate order.