**Joan D. MARTIN**

v.

**Evan D. HOWARD et al.**

**No. 99–483–Appeal.**

Supreme Court of Rhode Island.

Nov. 13, 2001.

Andrew W. Berg, Providence, Catherine A. Samartino, for Plaintiff.

Todd D. White, Gerald C. DeMaria, John W. Kershaw, Paul V. Curcio, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This appeal tells the tale of a parishioner whose pastor engaged in a sexual relationship with her during a six-month period in 1995 and 1996—allegedly without obtaining her valid or knowledgeable consent to do so. After sleeping with her pastor, however, did the parishioner then sleep on whatever rights she may have had to sue both the pastor and her church for their asserted wrongdoing? That question and the proper application of the governing statute of limitations are the focus of our inquiry.

Ultimately, in 1999, plaintiff-parishioner, Joan Martin (Martin), filed a complaint in Superior Court against defendant-pastor, the Reverend Evan D. Howard (Howard). She accused him of what amounted to clergy malpractice by engaging in an extramarital sexual affair with her. But did Martin do so in a timely fashion, or, as the trial justice ruled in dismissing her complaint, did she wait too long to take Howard and her church to court for their alleged misdeeds?

### Facts and Travel

On January 16, 1999, Martin filed her complaint in Superior Court against Howard, the Central Baptist Church of Rhode

Island (church), and the American Baptist Churches of Rhode Island (ABCORI) (collectively, the church defendants). She alleged that from September 1994 through February 1995—while she was a parishioner and the church's elected moderator, and while Howard was the church's pastor and married to another woman—Howard engaged her in a sexual relationship without her "valid or knowledgeable consent." Thereafter, in February 1995, an ABCORI church official contacted her, informed her that Howard had admitted to his sexual relationship with her, and that the church defendants would address this situation through an internal church mediation process that would be conducted in a fair, impartial, and confidential manner.

Martin further alleged that a church official later notified her, on or about May 30, 1995, that Howard had been placed on a paid leave of absence for six months and that the church defendants had asked him to take steps to address his admitted misconduct. The church defendants, however, offered no specific redress to Martin in response to her asserted "victimization" by Howard. Moreover, in June 1995, Howard supposedly denounced her to the congregation in a letter the church defendants had allowed him to read from the church pulpit, blaming her for causing him to stray from his ministry and his marital vows. Later, in January 1996, Martin learned that, upon the expiration of his paid leave of absence, the church defendants had allowed Howard to resume his pastoral duties without taking any further action to remedy his alleged wrongdoing or to redress Martin's injuries. As a result, she averred, the church defendants allowed Howard to defame her and to blame her for his own misconduct, all of which led to her constructive removal from the church. Finally, Martin alleged, by reason of the foregoing, she suffered grievous emotional and psychological injuries for which she sought an award of money damages from defendants.

Martin then filed an amended complaint that she divided into eight counts. Count 1 averred that, in light of Howard's lubricious liaison with her, the church defendants were negligent in hiring, supervising, and retaining him as pastor of the church. Count 2 alleged that the church defendants were responsible for Howard's wrongful acts because he was acting as their agent, servant, or employee. In count 3, Martin alleged that all defendants breached the fiduciary duties they owed to her before, during, and after the mediation process. Count 4 alleged that the church defendants fraudulently misrepresented to Martin that her claims arising from Howard's conduct would be redressed through a fair, impartial, and confidential internal church mediation. Counts 5 and 6 alleged that defendants were guilty of intentional and negligent infliction of emotional distress upon Martin. Count 7 alleged that the parties had a "binding and enforceable agreement" that the church defendants would mediate Martin's claims; that they would do so in a fair, impartial, and confidential manner through an internal church procedure; and that defendants breached this agreement by failing to observe and protect her best interests, failing to include her in the mediation, intentionally protecting Howard to her detriment, and causing defamatory statements about her to be published. Finally, count 8 of the complaint alleged that defendants breached an implied covenant of good faith and fair dealing by failing to treat Martin fairly and impartially in the course of and after the mediation had concluded.

As a result of defendants' conduct, Martin averred that she:

"has suffered and continues to suffer severe emotional and psychological dis-

tress, anxiety, depression, humiliation, embarrassment and loss of self esteem, has incurred and will continue to incur expenses for medical, psychiatric and psychological treatment, therapy and counseling, is unable to perform her normal daily activities and obtain the full enjoyment of life, has lost her Church, her self esteem and her spiritual center."

In response to Martin's amended complaint, defendants moved for its dismissal under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. After hearing argument and reviewing the parties' written submissions, a Superior Court motion justice granted the motion on the grounds that Martin had failed to initiate suit on her claims within the applicable three-year statute of limitations for filing personal-injury actions. *See* G.L.1956 § 9–1–14(b).

On appeal, Martin argues that she did not appreciate the full extent of her injuries during or immediately after ending her sexual relationship with Howard, which concluded in February 1995. As a result, she contends, the applicable statute of limitations should not have begun to accrue in this case immediately upon the surcease of her relationship with Howard. In any event, she suggests, fixing the accrual date for her claims necessarily involved the determination of disputed issues of material fact that should not have been resolved in the context of ruling on a Rule 12(b)(6) dismissal motion. Moreover, she reminds us, her complaint included claims for breach of contract, violation of fiduciary duties, and fraud, to which the motion justice should not have applied the three-year statute of limitations for actions alleging personal injuries. She further posits that the motion justice improperly barred

her from conducting discovery while defendants' dismissal motion was pending and that the court should not have disposed of this case as it did without properly converting the motion into one for summary judgment. Assuming, without deciding, that one or more of Martin's personal-injury claims arising out of Howard's alleged clergy malpractice might have been cognizable if timely filed,[1] we address these and Martin's other arguments below.

# I

## Stay of Discovery

We begin with Martin's argument that the motion justice improperly precluded her from conducting discovery while defendants' dismissal motion was pending. She contends that this stay of discovery hindered her from effectively defending against the pending motion to dismiss.

The Superior Court has broad discretion to regulate how and when discovery occurs. *Colvin v. Lekas,* 731 A.2d 718 (R.I.1999); *Bashforth v. Zampini,* 576 A.2d 1197 (R.I.1990). Thus, Rule 26(c) of the Superior Court Rules of Civil Procedure permits the motion justice to issue any order "which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." This accords with the underlying purpose of the Rules, which should always be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Super. R. Civ. P. 1.

Martin argues that the court's granting of defendants' request to stay discovery pending adjudication of the Rule 12(b)(6) motion unduly prejudiced her.

---

1. For a discussion of cases in other jurisdictions that either recognize or renounce clergy malpractice claims, see the cases collected at

John F. Wagoner, Jr., *Cause of Action for Clergy Malpractice,* 75 A.L.R.4th 750 (1989).

She contends that she needed to engage in discovery to "flesh out the facts in her complaint"—especially because she was suffering from post-traumatic-stress disorder after her relationship with Howard had ended and, thus, still was having difficulty communicating in the aftermath of defendants' alleged misconduct.

In furtherance of the principle of "judicial parsimony," however, a trial court possesses the discretion to stay discovery in a civil case until one or more potentially dispositive issues have been decided. *See Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 694, 53 S.Ct. 736, 738, 77 L.Ed. 1449, 1454 (1933). Thus, for example, courts have the power to stay discovery on the merits until challenges to jurisdiction have been resolved. *See Pyle v. Pyle*, 81 F.Supp. 207 (W.D.La. 1948); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, Civil 2d § 2040 at 521–22 (1994). Indeed, this Court has been reluctant to allow litigants to engage in a discovery "fishing expedition" merely to establish personal jurisdiction. *See Coia v. Stephano*, 511 A.2d 980 (R.I.1986); *Smith v. Johns–Manville Corp.*, 489 A.2d 336 (R.I.1985). Rather, under Rule 11, it is the duty of the plaintiff's attorney to conduct a good-faith investigation before filing a complaint that is sufficient to support allegations showing (1) the jurisdiction of the court, (2) the timeliness of the claims asserted therein, and (3), assuming the truth of the factual averments, the plaintiff's entitlement to relief as a matter of law—all without having to conduct discovery to do so.

In reviewing the motion justice's stay of discovery, we apply a deferential abuse-of-discretion standard. *Corvese v. Medco Containment Services, Inc.*, 687 A.2d 880 (R.I.1997); *Bashforth v. Zampini*, 576 A.2d 1197 (R.I.1990). Given the potentially dispositive nature of the dismissal motion, the fact that it must be decided solely with reference to the complaint without resort to any outside factual sources, and the prospective savings to all by preventing bootless expenditures of the parties' time, money, and efforts in promulgating and responding to discovery requests that may prove to be moot, we are of the opinion that the motion justice acted well within her discretion when she stayed discovery pending her ruling on the statute-of-limitations issue.

## II

### Failure to Convert the Motion to Dismiss to a Summary Judgment Motion

We next examine Martin's contention that the motion justice committed reversible error in dismissing all counts of her amended complaint under Rule 12(b)(6) without converting the motion to one for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure.

In the past, we have permitted a statute-of-limitations defense to be raised by a motion to dismiss under Rule 12(b)(6)—providing the alleged timing defect appears on the face of the complaint. *Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I.1991); *McDonald v. Rhode Island General Council*, 505 A.2d 1176, 1178 (R.I.1986); *see also* 1 Kent, *R.I. Civ. Prac.* § 12.10 at 116 (1969). This is so because the "sole function of a motion to dismiss is to test the sufficiency of the complaint." *Rhode Island Affiliate, ACLU, Inc. v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989) (citing *Ryan v. State Department of Transportation*, 420 A.2d 841, 842 (R.I.1980)). "In reviewing a trial justice's grant of a motion to dismiss pursuant to Rule 12(b)(6), this Court assumes the allegations contained in the complaint

to be true and views the facts in the light most favorable to the plaintiffs." *St. James Condominium Association v. Lokey*, 676 A.2d 1343, 1346 (R.I.1996) (citing *Builders Specialty Co. v. Goulet*, 639 A.2d 59, 60 (R.I.1994)). "This Court has cautioned that such a motion should not be granted 'unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim.'" *Id.* (citing *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967)).

In this case, Martin argues that the motion justice erred by making findings of fact beyond the allegations of her complaint. She contends that the motion justice found that the conduct plaintiff alleged to have caused her injuries occurred on or before February 1995. She argues that the date of her injury is a question of fact and that she did not immediately discover either the full extent of her injuries or their cause because of the severe emotional problems she experienced as a result of her affair with Howard.

■ In her decision, the motion justice concluded that "the tortious conduct alleged happened as of February, '95." A fair reading of the complaint shows that this is the only reasonable conclusion that can be drawn from the sexual-misconduct allegations. The complaint asserted that, during their sexual relationship, which began in 1994 and ended in February 1995, Howard exploited the power of his position to mislead Martin into performing "lewd and lascivious acts" with him. She further alleged, however, that "[t]he sexual component of Defendant Howard and Plaintiff's relationship ended in February 1995," and that her injuries were "a direct and proximate result" of Howard's sexual abuse and exploitation of his position. Given these assertions, it is apparent, therefore, on the

face of the complaint, that Howard's conduct that allegedly led to these injuries occurred more than three years before Martin filed her complaint on January 16, 1999. And even though Martin may not have appreciated or discovered the full extent of her injuries by the time her relationship with Howard had ended, she certainly knew what had happened to her, who was responsible, and that she had suffered some form of resultant injury, albeit the full extent of her alleged injuries was supposedly as yet unknown. This was enough, we hold, to trigger the accrual of her personal-injury claims for the purpose of the statute of limitations.

Because a Rule 12(b)(6) motion is directed solely to the sufficiency of the complaint itself, when the motion justice receives evidentiary matters outside the complaint and does not expressly exclude them in passing on the motion, then Rule 12(b)(6) specifically requires the motion to be considered as one for summary judgment. *See* Rule 56. Here, however, when the parties argued the motion to the court, they alluded to some factual matters that did not appear on the face of the complaint. If these factual matters had been properly presented to the court by affidavit or by other methods that would enable the court to take cognizance of them, and if the court did not exclude them from its consideration, then defendants' Rule 12(b)(6) motion should have been converted to one for summary judgment after giving reasonable notice to the parties that the court was doing so. *Palazzo v. Big G. Supermarkets, Inc.*, 110 R.I. 242, 292 A.2d 235 (1972).

■ Here, however, the court did not err in failing to convert the motion to one for summary judgment because the factual matters extraneous to the complaint were not presented in proper form for the court to consider. Arguments of

counsel are not evidence. *See State v. Tevay,* 707 A.2d 700 (R.I.1998); and *State v. Desroches,* 110 R.I. 497, 293 A.2d 913 (1972). Moreover, looking solely at the facts alleged within the four corners of the complaint, the court's dismissal ruling was not in error. Martin's "inclusion of dates in the complaint showing the action to be untimely render[ed] the complaint subject to dismissal upon [a Rule 12(b)(6)] motion." *Young v. Park,* 116 R.I. 568, 574, 359 A.2d 697, 700 (1976) (quoting *Kincheloe v. Farmer,* 214 F.2d 604 (7th Cir.1954), *cert. denied,* 348 U.S. 920, 75 S.Ct. 306, 99 L.Ed. 721 (1955)). The complaint revealed that Martin's alleged injury occurred between the summer of 1994 and February of 1995, when she and Howard engaged in their sexual relationship. Moreover, the church defendants allegedly told her about the result of the church mediation in May 1995, when they advised her that Howard had been placed on an unpaid leave of absence for six months and that he had been told to take certain other steps to address his misconduct. Consistent with what the church defendants had communicated to Martin in 1995, Howard later resumed his duties as church pastor in January 1996. In sum, during 1995, Martin knew that the mediation process had not resulted in the termination of Howard's employment with the church or in any other significant disciplinary measure. She also knew that, contrary to what the church defendants had told her, she had been excluded from any participation in the mediation process and that her exclusion led to what she considered to be unacceptable results. Thus, to the extent Martin alleged that these later mediation-related events had caused her independent personal injuries, she was bound to file her personal-injury claims arising therefrom within three years after these events occurred. Because she failed to do so, her claims were all time-barred.

### III

### The Accrual of Martin's Claims

"Statutes of limitations * * * promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788, 792 (1944).

Generally, a cause of action accrues and the applicable statute of limitations begins to run at the time of the injury to the aggrieved party. *Plouffe v. Goodyear Tire and Rubber Co.,* 118 R.I. 288, 293, 373 A.2d 492, 495 (1977); *Romano v. Westinghouse Electric Co.,* 114 R.I. 451, 459, 336 A.2d 555, 559–60 (1975). In some "narrowly circumscribed factual situations," *Renaud v. Sigma–Aldrich Corp.,* 662 A.2d 711, 714 (R.I.1995), however, when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct. *Compare Renaud v. Sigma–Aldrich Corp.,* 662 A.2d 711 (R.I.1995) (holding that, in a product liability case, statute of limitations began to run at the time of injury) *with Anthony v. Abbott Laboratories,* 490 A.2d 43 (R.I. 1985) (holding that, in a drug product-liability case, the running of the statute of limitations begins when the plaintiff dis-

covers, or should have discovered, his or her injuries); *Lee v. Morin,* 469 A.2d 358 (R.I.1983); *Wilkinson v. Harrington,* 104 R.I. 224, 243 A.2d 745 (1968). The reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured. If a reasonable person in similar circumstances should have discovered that the wrongful conduct of the defendant caused her injuries as of some date before the plaintiff alleged that she made this discovery, then the earlier date will be used to start the running of the limitations period. *Anthony,* 490 A.2d at 47.

After briefly examining the above-cited tolling cases, it is apparent to us that none of them are helpful to Martin. In *Wilkinson,* this Court held that a medical malpractice cause of action accrues when the plaintiff discovers or should have discovered that he/she has been injured as a result of the physician's negligent treatment. This discovery rule later was codified in G.L.1956 § 9–1–14(b). In *Lee,* the Court held that the discovery rule applied to improvements in real estate, "when the evidence of injury to property, resulting from the negligent act upon which the action is based, is sufficiently significant to alert the injured party to the possibility of a defect." 469 A.2d at 360. Again, in *Anthony,* we held that "in a drug, product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limi-

tations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." *Anthony,* 490 A.2d at 46.

Here, Martin seeks to toll the statute of limitations for her personal-injury claims beyond the time when both the alleged injury itself and the wrongful conduct causing that injury should have been known to a reasonable person. She argues that she did not appreciate the full nature and extent of her injuries at the time she first knew she had suffered harm because of Howard's alleged sexual abuse. Martin attributes this lack of appreciation to the "exceptional undue influence by the defendant that shape[d] what the plaintiff [was] able to understand and know at a particular time."

In *Doe v. LaBrosse,* 588 A.2d 605, 606 (R.I.1991), this Court examined for the first time the issue of applying the discovery rule to a civil sexual-assault case involving victims who were minors at the time of the alleged assault. The adult plaintiffs in the case had discovered many years after the fact that they had suffered sexual assaults as children and that these assaults were the cause of psychological injuries they suffered from as adults. *Id.* at 605. We remanded that case to the Superior Court for an evidentiary hearing to determine the date the plaintiffs discovered or reasonably should have discovered the causal connection between the defendant's acts and the plaintiffs' injuries. In the meantime, the Rhode Island General Assembly enacted G.L.1956 § 9–1–51, adopting a discovery rule for actions concerning crimes of childhood sexual abuse.[2]

**2.** General Laws 1956 § 9–1–51(a) provides as follows:

"All claims or causes of action based on intentional conduct brought by any person

for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within seven (7) years of the act alleged to have caused the injury or

*Doe v. LaBrosse,* 625 A.2d 222, 222 (R.I. 1993).

 Unlike the circumstances in *LaBrosse,* however, Martin has not alleged that she was a minor when she engaged in a sexual relationship with Howard or that she otherwise was legally incapacitated when she suffered her alleged injuries. This fact alone distinguishes her case from those of the sexually abused children for whom the General Assembly enacted the above-referenced sexual abuse and molestation statute. Here, ABCORI notified Martin in early 1995 that Howard had admitted his sexual misconduct and that the church defendants would engage in an internal mediation process in an attempt to address this situation. Thus, even if Martin had been uncertain before she communicated with ABCORI about the impropriety of Howard's conduct, the church defendants made it very clear to her that they considered his conduct to be improper, but that, from their standpoint, this situation and the problems it raised would have to be resolved through the process of an internal church mediation. Notification to Martin of the results of that mediation process allegedly took place in May 1995, when she was told that Howard would be placed on unpaid leave from his pastor's job for six months and that he had been "requested to take certain steps to address his admitted misconduct." Thus, she was on notice in 1995 that the promised mediation had not resulted in her participation in the process, in any more substantial disciplinary measures against Howard (much less in his permanent ouster as pastor), or in any redress whatsoever of her personal-injury claims. Yet Martin still failed to sue within three years of any of these dates. In short, Martin's complaint shows

that she should have known by the end of May 1995, at the latest, about the nature of her alleged injuries and the defendants' role in causing them; nevertheless, she did not file her personal injury claims until more than three years later—after the statutory period for doing so had expired.

## IV

### Contract Breach, Violation of Fiduciary Duties, Bad Faith, and Fraud Claims

Martin also asserted breach-of-contract, bad faith, violation of fiduciary duty, and fraud claims. The statute of limitations for such claims, she alleges, is ten years. She argues that defendants breached their agreement to mediate her claims against Howard and violated the fiduciary duties that they owed to her as a parishioner. She also alleges that because the church defendants misrepresented the church's mediation process, and did so in bad faith, they should be equitably estopped from invoking the personal-injury statute of limitations to dismiss her cause of action.

 Before we address Martin's statute of limitations and estoppel theories, the threshold issue for us to resolve is whether, based on the face of the complaint, an enforceable contract to mediate ever existed. In *Solomon v. Progressive Casualty Insurance Co.,* 685 A.2d 1073, 1074 n. 2 (R.I.1996) (mem.), we held that an unwritten agreement to mediate a claim could not be enforced by bringing an action for damages. In doing so, we relied by analogy upon G.L.1956 § 10–3–2 (requiring arbitration agreements to be in writing to be enforceable). Although Martin's counsel has suggested in argument that a document may exist that evidences

condition, or seven (7) years of the time the victim discovered or reasonably should have discovered that the injury or condition

was caused by the act, whichever period expires later."

the agreed-upon terms of the mediation, no averment in the complaint described or alluded to any such signed document. Nor was there any averment that Martin had been contemplating suit but that the church defendants specifically promised her that mediation would obviate or render moot any need for her to resort to litigation. In any event, the breach of an alleged agreement to mediate—even if it were in writing—fails to state a claim for which damage relief can be granted. *See Solomon*, 685 A.2d at 1074 (holding that the only recourse would be to petition the Superior Court for an order to enforce the terms of the agreement).

Moreover, in *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964), this Court construed the scope of the phrase "injuries to the person" within the context of the § 9–1–14(b) statute of limitations for personal-injury suits to

"include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law. *Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status or by virtue of an interest created by contract or property.*" *Miner*, 98 R.I. at 20–21, 199 A.2d at 610. (Emphasis added.)

 Martin's complaint described her injuries as severe emotional distress, anxiety, depression, humiliation, embarrass-ment, loss of self-esteem, and related medical and counseling expenses—all allegedly suffered because of Howard's "unwelcome" sexual conduct. These wrongs all were alleged personal injuries that would be compensable only if defendants had violated her right to be free from undesired sexual contacts and advances, a right she was entitled to enjoy "by reason of being a person in the eyes of the law," rather than by reason of "an interest created by contract." *Id.* Therefore, notwithstanding Martin's attempts to create a contract out of defendants' alleged promise to mediate her personal-injury claims, such an alleged contract wholly derived from and depended upon the prior existence of the personal-injury claims themselves. In addition, the asserted breach of this contract generated no new or different injuries other than the personal injuries for which Martin already was seeking damages. The same is also true for her bad faith, fraud, and violation-of-fiduciary-duty claims. In these circumstances, when the only injuries alleged are those to the plaintiff's person, § 9–1–14(b) applies and Martin's derivative breach-of-contract, bad faith, fraud, and fiduciary-duty claims are time-barred.

 We also are not persuaded that the complaint described a situation in which defendants gulled Martin into legal inaction, such that they should be equitably estopped from invoking the personal-injury statute of limitations to bar her claims.[3] Although the maxim that "no

---

**3.** In *Greater Providence Trust Co. v. Nationwide Mutual Fire Insurance Co.*, 116 R.I. 268, 273, 355 A.2d 718, 721 (1976), this Court noted that such an estoppel could be found when at least one of the following situations was present: (1) an insurer, by its actions or communications during the running of the otherwise applicable limitation period, had assured the claimant that a settlement would be reached on the underlying claim, thereby inducing a late filing, or (2) an insurer intentionally continued and prolonged the settlement negotiations to cause the claimant to allow the limitations period to elapse without commencing suit. But here there were no allegations in Martin's amended complaint involving any settlement negotiations with an insurer. Nor did she allege that any of the

man may take advantage of his own wrong * * * has frequently been employed to bar inequitable reliance on statutes of limitations," Allan E. Korpella, *Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations,* 43 A.L.R.3d 429, § 3 (1972) (quoting *Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959)), "the plaintiff's reliance on the defendant's conduct must be reasonable, and there must be some form of affirmative deception by the defendant." *Id.* (citing *Snortland v. State,* 615 N.W.2d 574 (N.D. 2000) and quoting *Narum v. Faxx Foods, Inc.,* 590 N.W.2d 454 (N.D.1999)). Martin did not aver that any defendants affirmatively had promised to settle her claims via mediation to lull her into a reasonable belief that her claims would be resolved without suit. Furthermore, Martin failed to allege that any such promises were made to her within three years of the filing of her complaint. Indeed, Martin's complaint revealed that, as of May 30, 1995, she had been apprised of the results of the internal mediation process, yet she failed to file her complaint until after the personal-injury statute of limitations had expired more than three years later.[4]

Finally, even if Martin had filed her complaint before the three-year statute of limitations had elapsed, it is unlikely that the Superior Court would have been able to review and adjudicate the defendants' alleged failure to conduct an internal church mediation in a fair, impartial, and confidential manner, as allegedly promised. Such a judicial inquiry inevitably would entangle the courts in interpreting, enforcing, or overruling church doctrine, thereby offending the free exercise clause of the First Amendment to the United States Constitution as well as our own state constitutional guaranty of "full liberty in religious concernments." R.I. Const. art. 1, sec. 3.

In *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich,* 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), the United States Supreme Court determined that a civil court must accept the ecclesiastical decisions of church tribunals because such rulings were not appropriate matters for judicial review. The Court went on to say there is no "dispute that questions of church discipline and the composition of the church hierarchy are at the core of ecclesiastical concern * * *." *Id.* at 717, 96 S.Ct. at 2384, 49 L.Ed.2d at 169. Under similar circumstances, in *Burgess v. Rock Creek Baptist Church,* 734 F.Supp. 30, 30–31 (D.D.C.1990), a former church member brought suit against the church for damages for intentional infliction of emotional distress in terminating her church mem-

---

defendants made any affirmative promises to settle her claims via mediation to lull Martin into a reasonable belief that her claims would be resolved without suit.

4. *Cf. Repp v. Oregon Health Sciences University,* 972 F.Supp. 546 (D.Or.1997) (holding that the statute of limitations was not tolled while plaintiff apparently pursued administrative remedies). There, the plaintiff, a dismissed medical student, argued that the school had lulled him into filing an untimely claim by leading him to believe that a full scale review of the dismissal decision was underway, that it would be accomplished quickly, and that

the school was formulating a plan for his reinstatement on a probationary basis. Ultimately, the president of the university denied his appeal. The plaintiff waited two years after the denial, and four years after he was dismissed from medical school before bringing suit. The court found that this delay was "compelling evidence that plaintiff was in no hurry to bring this action and that he was not improperly induced to delay filing this action until his internal appeal had been resolved. * * * [T]he defendant's alleged misrepresentations do not appear to have been the controlling factor." *Id.* at 548.

bership and in treating her as a nonmember. The court granted defendants' motion for summary judgment, and held that the dispute about the church official's termination of the plaintiff's church membership was a matter of "ecclesiastical cognizance" that the court could not adjudicate without offending the separation of church and state compelled by the First Amendment to the United States Constitution. *Id.* at 31.

Here, as alleged in this complaint, the internal mediation process of the church defendants involved a religious disciplinary proceeding that was a matter of "ecclesiastical cognizance." For the courts in this jurisdiction to question such a proceeding on judicial review, much less to consider overturning its protocols and processes as somehow violating Martin's secular rights, would be to interfere unduly with the defendants' "full liberty in religious concernments" that is protected under article 1, section 3 of the Rhode Island Constitution. We decline to do so.

### Conclusion

For the above reasons, we deny Martin's appeal and affirm the Superior Court's judgment dismissing her complaint.