DeVere V. CARNEY, Jr., et al.

v.

KARDINAL LAND, INC. et al.

No. 2001–495–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 2003.

Christopher M. Rawson, Jeanne Scott, Providence, for Plaintiff.

Robert Fine, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Kathleen E. Carney Page (Page), has appealed the Superior Court's entry of summary judgment denying her counterclaim of fraud against the plaintiff, DeVere V. Carney, Jr. (DeVere). She argues that the trial justice improperly overlooked evidence that presented a question of material fact about tolling the statute of limitations on her fraud counterclaim. This case came before the Supreme Court for oral argument on December 3, 2002, pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' memoranda, the record, and the arguments of counsel, we conclude that cause has not been shown, and we affirm the judgment of the Superior Court.

### Facts and Travel

This case arose from a dispute between half-siblings [1] over the ownership of Kardinal Land, Inc. (Kardinal Land), a Rhode Island corporation that owned real estate in Rhode Island. Their deceased father, DeVere V. Carney, Sr. (the decedent), was the sole stockholder. The dispute began in 1984, after their father died. Page maintained that the decedent had transferred his ownership of Kardinal Land to her before he died, by endorsing the back of his stock certificate in her name. After checking the corporate records and making inquiries of the corporation's president, DeVere determined that no valid transfer of ownership had occurred under the corporate bylaws. Accordingly, the executors of the decedent's estate called a special meeting and authorized the reissuance of the stock certificate in the name of the estate. From 1984 through 1988, the shares of stock in Kardinal Land were distributed to DeVere, DeVere V. Carney, III, Sean R. Carney, Thomas P. Carney, Erin M. Carney, and Dorothy M. Carney (collectively, the Carneys).

Although this dispute began in 1984, the Carneys did not attempt to resolve the ownership of Kardinal Land until February 11, 1998, when they filed suit against Page and Kardinal Land, requesting a declaratory judgment that the Carneys were the rightful owners of the stock and that Page had no ownership interest in those shares. In response, Page filed a counterclaim against DeVere,[2] alleging that he had attempted to defraud her of her interest in the company and alleging that the Carneys had slandered the title of Kardinal Land. The trial justice granted the Carneys' motion for summary judgment on their declaratory judgment action without prejudice to Page's counterclaim. DeVere then moved for summary judgment on Page's fraud counterclaim, asserting that the catchall ten-year statute of limitations for civil actions (G.L.1956 § 9–1–13(a)) barred this claim. Reasoning that the fraud alleged by Page occurred in 1984 and that she did not file her fraud claim until 1998, the trial justice agreed and granted the motion. Before us is Page's appeal from the entry of summary judgment on her counterclaim for fraud.

### Standard of Review

 This Court reviews *de novo* a trial justice's decision to grant summary judgment, applying the same rules and

---

1. Page is the issue of DeVere V. Carney, Sr. (the decedent) and his first wife, Elizabeth Disher. DeVere is the issue of the decedent and his second wife, Margaret R. Carney.

2. Although both Page and Kardinal Land were the named defendants in the Carneys' original action, Page individually brought this counterclaim only against DeVere and not against the remaining Carneys.

analysis as those applied by the trial justice. *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I. 1996). Accordingly, if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact existed and that the moving party was entitled to judgment as a matter of law, we affirm the grant of summary judgment. *Id.* Moreover, a party opposing a summary judgment motion may not simply rest on the allegations and denials in its pleadings, but must prove by competent evidence the existence of a disputed material issue of fact. *Id.*

### Statute of Limitations

Previously, we have determined that fraud actions are subject to § 9–1–13(a)'s ten-year period for bringing civil actions. *Bourdon's, Inc. v. Ecin Industries, Inc.,* 704 A.2d 747, 753 (R.I.1997). The statute of limitations begins to run when a party becomes aware of fraudulent conduct, or, in situations "in which a reasonable person would not have discovered the legal acti[o]n prior to the time of injury, the statute begins to run at the time the injury manifests itself." *Jones v. Moretti,* 711 A.2d 1156, 1157 (R.I.1998) (mem.) (quoting *Lee v. Morin,* 469 A.2d 358, 360 (R.I.1983)).

During the 1984 probate of the decedent's will, Page alleged that she was the true owner of Kardinal Land. In her supplemental affidavit opposing DeVere's motion for summary judgment on the fraud counterclaim, however, Page admitted that she received a draft inventory of the decedent's estate from DeVere in April 1984 that included Kardinal Land stock as an asset of the estate. According to Page she

"told DeVere that, because our father had given me the stock, the stock should be taken off the inventory. DeVere

agreed and said that he would take care of that and have the attorneys remove it from the inventory. I trusted that he would do that and not lie to me."

Kardinal Land stock, however, was never removed from the inventory and was distributed as part of the decedent's estate.

Page argued on appeal that the statute of limitations should have been tolled because she relied on DeVere's assurance that the listing of the Kardinal Land stock in the draft inventory of the decedent's estate was a mistake and that he would remove it from the inventory. Moreover, Page asserted that she "never received a final corrected inventory." Further, she maintained that she did not become aware of DeVere's fraud until the Carneys filed their declaratory judgment action. Thus, she argued, her cause of action did not accrue until 1998.

This Court recently held that for a statute of limitations to be tolled, "the plaintiff's reliance on the defendant's conduct must be reasonable, and there must be some form of affirmative deception by the defendant." *Martin v. Howard,* 784 A.2d 291, 303 (R.I.2001) (quoting Allen E. Korpella, *Fraud, Misrepresentation, or Deception as Estopping Reliance on Statute of Limitations,* 43 A.L.R.3d 429, § 3 (1972)). Page's allegations failed to satisfy this requirement of reasonable reliance. She did not allege that DeVere assured her that she owned the corporation or that he disclaimed any interest therein. Moreover, in 1986, Page did have the opportunity to review the final distribution of the estate but chose not to, signing a "Waiver of Accounting and Service of Petition for Discharge," which served as a consent to the distribution of the estate. The first page of this document contained the following paragraph above the signature line:

"The undersigned further acknowledges receipt of complete distribution of

the share of the estate to which the undersigned was entitled, releases the personal representative from all further liability in connection with this estate, and consents to the entry of an order discharging the personal representative without notice, hearing, or waiting period and without further accounting."

Appendix B to this document then listed Kardinal Land, Inc. among the assets being distributed to the decedent's widow, Margaret Rogers Carney. Even accepting Page's assertion that she did not realize what she was signing, we disagree that the statute of limitations should have been tolled because, under these circumstances, Page's reliance on DeVere's representations was not reasonable. Therefore, regardless of whether Page's cause of action accrued in 1984 or 1986, the time within which Page could have sued for fraud had elapsed when Page filed her counterclaim in 1998.

▮▮ It is our opinion that, even assuming *arguendo* that Page's initial reliance on DeVere's alleged promise was reasonable, her failure to confirm its fulfillment for twelve years was not. We have explained that "the statute of limitations does not begin to run until the plaintiff 'discovers, or with reasonable diligence should have discovered, the wrongful conduct * * *.' " *Supreme Bakery, Inc. v. Bagley*, 742 A.2d 1202, 1204 (R.I.2000) (per curiam) (quoting *Benner v. J.H. Lynch & Sons, Inc.*, 641 A.2d 332, 337 (R.I.1994)). This "reasonable diligence standard is based upon the perception of a reasonable person placed in circumstances similar to the plaintiff's, and also upon an objective assessment of whether such a person should have discovered that the defendant's wrongful conduct had caused him or her to be injured." *Martin*, 784 A.2d at 300.

Here, Page failed to take any steps either to verify DeVere's alleged promise to remove Kardinal Land from the estate asset list, or to review the final inventory of the estate. Despite DeVere's explicit rejection of the validity of Page's stock certificate,[3] Page did not investigate the status of the corporation's ownership. By exercising reasonable diligence, Page would have discovered that the corporate stock had been distributed as part of her father's estate long before the Carneys filed their declaratory judgment action in 1998. Her actions, however, fell far short of this Court's requirement that a party exercise reasonable diligence to discover fraudulent conduct. Thus, we agree with the trial justice and reject Page's argument that she had no direct or constructive knowledge of DeVere's improper conduct until the Carneys filed their action in 1998.

### Conclusion

Therefore, we conclude, the trial justice properly found that no material issues of fact existed concerning whether Page should have known about the existence of a fraud cause of action more than ten years before she filed her counterclaim. Because this issue is dispositive of her appeal, we need not address the question, raised by DeVere, of whether Page's fraud counterclaim was barred by the doctrine of laches. Thus, Page's appeal is denied and

---

**3.** In Page's account of a conversation with DeVere concerning the stock certificate that the decedent allegedly transferred to her, she stated:

"Shortly after my father's death, [DeVere] and I met in Florida. I showed [him] the original stock certificate signed over by my father to me. He held the stock certificate in his hands and looked at both the front and the back. He told me the stock certificate was worthless and asked that he be allowed to keep it. I refused to give it to him."

dismissed, and the Superior Court's entry of summary judgment for DeVere is affirmed. The papers of this case may be returned to the Superior Court.