January 19, 2024

**Supreme Court**

No. 2022-355-Appeal.
(PM 19-10798)

In re Orlando A. Da Cruz.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Orlando A. Da Cruz.                    :

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The plaintiff, Clara Martins, appeals from a Superior Court judgment in favor of the intervenor, Isabel DaPina Costa,[1] following the grant of the intervenor's motion for summary judgment.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] Multiple spellings of the intervenor's name appear in the record.  We use the iteration that appears in the motion to intervene.  No disrespect is intended.

# I

## Facts and Travel

Orlando A. Da Cruz[2] died on May 1, 2008.  His obituary refers to intervenor as his "common-law- wife" [*sic*], and his death certificate names her as his spouse. The plaintiff, Da Cruz's mother, argues that intervenor was never married to her son, and instead refers to intervenor—with whom Da Cruz had three children—as his "live-in girlfriend."  The present case stems from this dispute.

## Probate Proceedings

Born in Cape Verde, Da Cruz was a resident of Providence, Rhode Island, and worked for Brown University at the time of his death.  According to plaintiff, while she and other members of her family were making funeral arrangements, intervenor "presented herself to the funeral home" and "changed [Da Cruz's] death certificate under false pretenses."  The funeral home published Da Cruz's obituary on May 5, 2008, and described intervenor therein as his common-law wife.

Two days later, on May 7, 2008, the funeral home filed Da Cruz's death certificate, which lists intervenor as not only his spouse but also the informant.[3]  In

---

[2] The last name "Da Cruz" appears in the record either with or without a space.  We use the iteration that appears on his death certificate and citizenship documents.  No disrespect is intended.

[3] An informant is someone who provides the funeral director, or another person authorized to file a death certificate, with personal data about the decedent. *See* G.L. 1956 § 23-3-16(b).

her prebriefing statement, plaintiff implies that these details of the death certificate were unknown to her until proceedings commenced in the Providence Probate Court the following month. As for the obituary, plaintiff has claimed that she and other members of her family knew about and disputed the reference to intervenor as Da Cruz's common-law wife but did not seek a correction because they wanted to "avoid additional family drama and distress."

In probate court, an attorney entered her appearance on plaintiff's behalf on June 20, 2008, and plaintiff objected to the appointment of intervenor as administratrix of Da Cruz's estate soon thereafter. According to plaintiff, intervenor named herself as Da Cruz's spouse in the initial administration petition.[4] Litigation ensued, during which plaintiff concedes in her prebriefing statement that the details of her son's death certificate "came to light."

On July 24, 2008, plaintiff and intervenor agreed to the appointment of a third-party attorney as administrator of Da Cruz's estate. The probate court closed the estate in 2010.

In her filings in Superior Court, plaintiff represented that she "assumed that the death certificate had been corrected" during the probate proceedings but realized this was not the case "when she requested a new copy of her son's death certificate." The plaintiff does not state exactly when she made this request, but a copy of the

---

[4] The Providence Probate Court records are not part of the record on appeal.

death certificate attached to the complaint was issued on March 9, 2018.  Sometime thereafter, "around 2019," plaintiff sought legal advice regarding her own estate, and her legal counsel in Cape Verde advised her that Da Cruz's "erroneous death certificate would interfere with her estate planning and that she should get it corrected as soon as practicable." (Brackets omitted.)

**First Round of Motions**

On November 7, 2019, plaintiff filed a *pro se* complaint in Superior Court seeking to amend the death certificate.  She also sent the Rhode Island Department of Health's Division of Vital Records a request to amend the death certificate that same day.  A Superior Court summons named the Department of Health as defendant, and the Department filed an answer stating that it lacked "knowledge or information sufficient to form a belief as to the truth of the matters asserted."  Then, on December 16, 2019, Costa filed a motion to intervene, which the Superior Court granted.

The intervenor also filed motions to dismiss and for judgment on the pleadings.  In the latter motion, intervenor argued that the limitations period applicable to plaintiff's claim, codified at G.L. 1956 § 9-1-13(a), had expired.  Section 9-1-13(a) states that, "[e]xcept as otherwise specially provided, all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not after."  According to intervenor, the complaint and attachments

"ma[d]e it clear" that plaintiff knew in 2008 that her son's death certificate named Costa as his spouse; therefore, she no longer had a viable cause of action in 2019 when she filed the complaint.

In her memorandum in opposition to intervenor's motion for judgment on the pleadings, plaintiff—now represented by an attorney—made two arguments regarding the statute of limitations. Her principal argument was that "§ 9-1-13 [did] not apply * * * because [hers was] not a products liability complaint," nor, for that matter, one of negligence, which was the type of case intervenor cited in her motion. In the alternative, plaintiff argued that the statute of limitations was tolled until 2019, when she sought legal advice regarding her estate, because only then did she discover that her son's unamended death certificate might affect her estate planning in Cape Verde. As support, plaintiff cited *Martin v. Howard*, 784 A.2d 291 (R.I. 2001), in which this Court held that, "[i]n some 'narrowly circumscribed factual situations,' * * * when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct." *Martin*, 784 A.2d at 299 (quoting *Renaud v. Sigma-Aldrich Corporation*, 662 A.2d 711, 714 (R.I. 1995)). This exception is known as the "discovery rule." *See Mendes v. Factor*, 41 A.3d 994, 1005-06 (R.I. 2012).

In contrast to intervenor in her motion, plaintiff discussed § 9-1-13 in her memorandum without reference to subsection (a). In her reply, intervenor observed that, while subsection (b) provides a special rule for the statute of limitations in products-liability cases, subsection (a) provides the general rule for "all civil actions" and thus governed plaintiff's claim. She disregarded plaintiff's attempt to distinguish her claim from the negligence cases that intervenor cited in her motion. As for plaintiff's invocation of *Martin*, intervenor contended that the discovery rule did not apply because the record indicated that, "as far back as 2008," plaintiff knew or should have known that her son's death certificate referred to intervenor as his spouse and, furthermore, that this might have legal implications regarding the assets to which he was entitled.

## Second Round of Motions

The Superior Court did not render a decision on either of intervenor's 2019 motions. Almost three years later, in July 2022, intervenor filed a second set of motions, which this time included a motion for summary judgment. Again, in her memorandum in support of her motion for judgment on the pleadings, Costa argued that plaintiff lacked a viable cause of action because the applicable statute of limitations—set forth in § 9-1-13(a)—had expired. According to intervenor, "[t]he pleadings ma[d]e it clear that [plaintiff] was aware of the alleged wrongdoing and failed to pursue it."

- 6 -

In her memorandum in opposition to intervenor's motion, plaintiff focused on the discovery-rule exception and dropped the argument that § 9-1-13 did not apply. Indeed, this time she referred explicitly to § 9-1-13(a). The intervenor's reply, however, both invoked and refuted plaintiff's earlier argument that the statute was limited to products-liability cases and was therefore inapplicable.

**Summary-Judgment Hearing**

The parties came before the Superior Court on October 25, 2022, for a hearing on intervenor's motions. The hearing justice noted that he had "read everything," but he asked the parties whether they had "anything to add to what [they] filed[.]" The plaintiff raised two arguments that did not appear in her memoranda. First, plaintiff revived the argument, albeit in passing, that § 9-1-13(a) is "a products liability statute, and I don't think it applies * * *." Second, she argued that, even if the statute applied, her alleged injury occurred in 2010 at the close of the probate proceedings—when she assumed her son's death certificate had been corrected—and not in 2008; therefore, the ten-year statute of limitations had not expired when she filed her complaint in 2019.

Following plaintiff's arguments, the hearing justice announced his decision from the bench. To begin, having notified the parties the previous day of his intentions, the hearing justice converted intervenor's several motions into a single

- 7 -

motion for summary judgment.  The hearing justice made this decision because the parties' filings relied on material outside the scope of the pleadings.

The hearing justice next considered intervenor's argument that plaintiff lacked a viable cause of action because the applicable statute of limitations had expired. After finding that § 9-1-13(a) applied to plaintiff's claim, the hearing justice stated that the "parties do not dispute the facts pertinent to the statute of limitations analysis."  According to the hearing justice, plaintiff did not dispute, and had even conceded, not only that she was aware of intervenor's "allegedly wrongful conduct" in 2008, but also "that she assumed that all issues related to her son and the Death Certificate had been resolved in the Probate Court such that she did not pursue correction of the Death Certificate after the estate was closed."  The hearing justice concluded that the statute-of-limitations issue therefore presented a question of law, because there were "no predicate facts to be determined by a fact finder[.]"

From there, the hearing justice examined plaintiff's contention that her claim warranted an exception to the statute of limitations under the discovery rule; he concluded that it did not.  "[T]he first problem," he explained, was that plaintiff knew in 2008 that her son's death certificate named intervenor as his spouse, which a reasonable person should have known could affect the administration of her son's estate and her estate as well.  The hearing justice also noted that plaintiff "was directly involved in the probate proceedings * * * and sought to establish that

- 8 -

[i]ntervenor was not legally married to [Da Cruz] to prevent [i]ntervenor from becoming a beneficiary of [his] estate." According to the hearing justice, this made unreasonable her assumption that the proceedings resolved all issues concerning her son's death certificate, thus undercutting the second argument that she made at the hearing but not in her memoranda. Finally, the hearing justice noted that "the Rhode Island Probate Court is not vested with the jurisdiction to declare legal relations between individuals," thereby making plaintiff's assumption even less reasonable. (Citing G.L. 1956 § 8-9-9.) In the exercise of reasonable diligence, the hearing justice concluded, plaintiff should have discovered her alleged injury in 2008, and so the statute of limitations had not been tolled. He therefore granted intervenor's motion for summary judgment.

The Superior Court entered final judgment in favor of intervenor on December 1, 2022. The plaintiff filed a premature but valid notice of appeal on November 21, 2022.

## II

### Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Apex Development Company, LLC v. Rhode Island Department of Transportation*, 291 A.3d 995, 998 (R.I. 2023) (quoting *Nelson v. Allstate Insurance Company*, 228 A.3d

983, 984-85 (R.I. 2020)).  "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Nelson*, 228 A.3d at 985).  "Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Id.* (quoting *Nelson*, 228 A.3d at 985).

## III

## Discussion

The plaintiff raises only one argument on appeal.  As before, she contends that § 9-1-13(a) does not apply, but now her argument is that, although § 9-1-13(a) provides a general rule for "all civil actions," the complaint she filed in Superior Court is not a civil action.  The plaintiff points instead to a different statute, codified at G.L. 1956 § 23-3-21, which governs the correction and amendment of vital records.  According to plaintiff, this separate statute controls her claim, and because it does not provide for a limitations period, the filing of her complaint was never time constrained.  Because plaintiff did not raise this argument in Superior Court, however, it has not been preserved for appellate review.

"According to this Court's well settled raise-or-waive rule, issues not properly presented before the trial court may not be raised for the first time on appeal." *Donnelly Real Estate, LLC v. John Crane Inc.*, 291 A.3d 987, 994 (R.I. 2023) (quoting *Borgo v. Narragansett Electric Company*, 275 A.3d 567, 576-77 (R.I. 2022)). Here, plaintiff's specific argument on appeal regarding the statute's application is not the argument she made in Superior Court. In other words, plaintiff "advance[d] a new theory on appeal [that] was not raised before the trial court." *State v. Bido*, 941 A.2d 822, 828-29 (R.I. 2008). She has therefore waived this argument on appeal.

Even if plaintiff had not waived this argument, however, we would hold that § 9-1-13(a) applies to her claim. Section 23-3-21 governs the correction of vital records, which plaintiff has sought with respect to her son's death certificate. Although the statute lacks a discrete limitations period for making requests to amend vital records, the State Registrar for Vital Records may not grant certain requests without a court order. *See* § 23-3-21.[5] The plaintiff concedes that hers is one such request. Nonetheless, she argues that "§ 23-3-21 is a bureaucratic mistake correction statute and cannot be controlled by any statute of limitations[,]" and therefore it does not matter when she filed her complaint in Superior Court.

---

[5] Regulations provide that the State Registrar for Vital Records has the sole power to amend vital records. 216 RICR 10-10-1.37(A).

- 11 -

In certain cases, § 23-3-21 might operate to correct "bureaucratic mistake[s]," such as transcription errors, misspellings, and the like. The plaintiff's case, however, is not one of them. At the heart of plaintiff's request to correct her son's death certificate is not some minor typographical error, but rather an allegation of fraud, which the state registrar, as a "ministerial officer, possessing limited discretion," lacks power to adjudicate. *Souza v. O'Hara*, 121 R.I. 88, 92, 395 A.2d 1060, 1062 (1978). Furthermore, intervenor has a clear interest in the subject of plaintiff's complaint, that is, whether she is recognized by this state as the surviving spouse of Orlando A. Da Cruz. Were the state to grant plaintiff the relief she seeks, this would have significant implications for intervenor's legal rights and obligations, to say nothing of dignitary or emotional harm. Indeed, this is what enabled her to intervene in this matter to begin with. *See* Super. R. Civ. P. 24(a).

It may just be that not all requests to amend vital records are subject to a statute of limitations, but then again, not all requests to amend vital records require the applicant to commence a civil action. In 1910, this Court defined "[t]he term 'civil action,' as used in statutes," to mean "a proceeding in a court of justice by one party against another for the enforcement or protection of a private right or the redress of a private wrong." *Thrift v. Thrift*, 30 R.I. 357, 363, 75 A. 484, 487 (1910). More recently, we defined "civil action," in the context of another statute, as a "judicial proceeding which is commenced by the filing of a complaint and all other required

documents together with the fees prescribed by law." *Johnson v. Johnson*, 264 A.3d 835, 839 (R.I. 2021); *see also* Super. R. Civ. P. 2 ("There shall be one (1) form of action to be known as 'civil action.'"). According to either definition, the plaintiff commenced a civil action when she filed her complaint in Superior Court to amend her son's death certificate. Because the statute of limitations under § 9-1-13(a) applies to "all civil actions" unless otherwise provided, and because the legislature has not enacted a special rule for requests to amend vital records, § 9-1-13(a) applies to the plaintiff's claim. Consequently, we concur with the hearing justice that the plaintiff's complaint is barred by the statute of limitations set forth in § 9-1-13(a).

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The papers in this case may be remanded to the Superior Court.


Justice Long did not participate.

- 13 -

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Orlando A. Da Cruz. |
| **Case Number** | No. 2022-355-Appeal. (PM 19-10798) |
| **Date Opinion Filed** | January 19, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Kevin McHugh |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Christopher J. Petrarca, Esq.<br>For Intervenor:<br><br>Steven A. Robinson, Esq. |