DECISION
This matter is before the Court on Defendants' Motion to Dismiss, brought pursuant to Super. Ct. R.Civ.P. 12(b)(6). They assert that the Plaintiff's Complaint is time barred, pursuant to Rhode Island's wrongful death statute, G.L. 1956 § 10-7-2 ("Persons who may bring actions-Limitation of actions-Minimum recovery period.").
 Facts and Travel
In this wrongful death action, the plaintiff, Thomas Noel O'Sullivan (Plaintiff), has filed suit on his behalf, on behalf of his deceased spouse's estate, and on behalf of their three minor children, alleging medical malpractice. He has sued Rhode Island Hospital, Dr. Michael Mraz, Dr. James Klinger, Dr. Richard Millman, and Dr. Mitchell Levy (Defendants). Dr. Mraz is no longer a party to this suit.
On February 8, 1999, the Plaintiff's wife arrived at the Newport Hospital Emergency Department, complaining of nausea, vomiting, decreased appetite and persistent fever. She was discharged after the performance of diagnostic tests and after being rehydrated. On February 9, 1999, she went back to the emergency room for largely the same symptoms. She was again rehydrated, but no new diagnostic tests were performed. On February 11, 1999, the Plaintiff's wife again went to the emergency room where she was admitted and diagnosed with severe bilateral pneumonia and severe neutropenia. The next day, the plaintiff's wife was transferred to Rhode Island Hospital, where she spent three weeks in the intensive care unit. On March 1, 1999, she died as a result of the pneumonia.
On April 1, 1999, the Plaintiff requested his deceased wife's medical records from Rhode Island Hospital. On June 8, 1999, the Plaintiff received an "abstract" of the records, receiving the complete records on June 28, 1999. The Plaintiff filed a different suit against Newport Hospital in 1999. The Plaintiff filed this suit on June 6, 2002.
 Standard of Review
When determining whether to grant a Rule 12(b)(6) motion to dismiss, this Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs."Giuliano v. Pastina, Jr., 793 A.2d 1035, 1036-37 (R.I. 2002) (quotingMartin v. Howard, 784 A.2d 291, 297-98 (R.I. 2001)). This Court should not grant the motion "unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim." Id. at 1037 (quoting Braggv. Warwick Shoppers World, Inc., 227 A.2d 582, 584 (R.I. 1967)). "A dismissal motion that relies on evidence outside of the pleadings, however, must be treated as a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure." Strynar v. Rahill,793 A.2d 206, 209 (R.I. 2002) (citing Martin v. Howard, 784 A.2d 291, 298-99 (R.I. 2001)).
In arguing in opposition to the motion, the Plaintiff has relied on matters outside the pleadings, most notably the Plaintiff's own affidavit. After agreement by both parties, and based on Rhode Island law, this Court will treat the matter as a motion for summary judgment, pursuant to Rule 56 of the Rhode Island Superior Court Rules of Civil Procedure. Rule 56, of course, requires a court to utilize a different standard than that of a court entertaining a 12(b)(6) motion.
"Summary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter . . . that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v.Burrillville Racing Association, 603 A.2d 317, 320 (R.I. 1992) (citingSteinberg v. State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297
(R.I. 1980)); Super. Ct. R.Civ.P. Rule 56(c). During a summary judgment proceeding, "the court does not pass upon the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Id. (citing Lennon v.MacGregor, 423 A.2d 820 (R.I. 1980)). Moreover, "the trial justice must look for factual issues, not determine them. The justice's only function is to determine whether there are any issues involving material facts."Id. (quoting Steinberg, 603 A.2d at 340). The court's purpose during the summary judgment procedure is issue finding, not issue determination.Industrial National Bank v. Peloso, 397 A.2d 1312, 1313 (R.I. 1979) (citing O'Connor v. McKanna, 359 A.2d 350 (R.I. 1976); Slefkin v.Tarkomian, 238 A.2d 742 (R.I. 1968)). Thus, the only task of a trial justice in ruling on a summary judgment motion is to determine whether there is a genuine issue concerning any material fact. Id. (citing RhodeIsland Hospital Trust National Bank v. Boiteau, 376 A.2d 323 (R.I. 1977)). "When an examination of the pleadings, affidavits, admissions, answers to interrogatories and other similar matters, viewed in the light most favorable to the party opposing the motion, reveals no such issue, the suit is ripe for summary judgment." Id. (Citations omitted.) In this case, the facts are not in dispute. Therefore, the suit is ripe for summary judgment.
 Statute of Limitations Analysis
Section 10-7-2 of the General Laws is Rhode Island's statutorily created cause of action for wrongful death. In pertinent part, it reads:
 "Except as otherwise provided, every action brought pursuant to this chapter shall be commenced within three (3) years after the death of the person. With respect to any death caused by any wrongful act, neglect or default which is not known at the time of death, the action shall be commenced within three (3) years of the time that the wrongful act, neglect or default is discovered or, in the exercise of reasonable diligence, should have been discovered." G.L. 1956 § 10-7-2.
The Defendants assert that pursuant to G.L. 1956 § 10-7-2, the Plaintiff has three years to file his complaint alleging wrongful death. The date of the decedent's death was March 1, 1999. It is undisputed that the Plaintiff did not file suit against these parties until June 6, 2002. The Defendants argue that the right to sue accrues upon the date of death. They further argue that the Plaintiff was under a duty to diligently investigate the facts and circumstances surrounding the death of the decedent and file suit within the statutorily prescribed time. Further, any reliance upon the so-called "discovery rule," for purposes of tolling the statute, is misplaced in this case. Therefore, according to the Defendants, the claim is time-barred because the Plaintiff has exceeded the statutorily prescribed time limits for bringing this cause of action.
The Plaintiff has framed the issue in a different light: "From the date of [the decedent]'s death on March 1, 1999, until June 8, 1999, was Plaintiff reasonably diligent in his efforts to discover whether [the decedent] died as a result of any negligent act that may have occurred at Rhode Island Hospital?" Further, the Plaintiff argues that for statute of limitations purposes regarding the wrongful death statute, § 10-7-2, the date of death is not the triggering date for the running of the statute of limitations. He argues that he exercised reasonable diligence in ascertaining the cause of the decedent's death. Therefore, according to the Plaintiff, the receipt of medical records is the operative event for the triggering of the statute. The Plaintiff maintains that because he filed suit within three years of the receipt of the medical records, dismissal is improper.
Whether a plaintiff has acted with reasonable diligence is a question of law. Dionne v. Baute, 598 A.2d 833, 835 (R.I. 1991); see also Meyettev. Leach, 651 A.2d 1229, 1229 (R.I. 1994); Benner v. J.H. Lynch Sons, Inc., 621 A.2d 332, 335 (R.I. 1994); Trudeau v. Dupre, 640 A.2d 634, 635 (R.I. 1994). The Rhode Island Supreme Court has visited the issue of the "discovery rule" and the potential tolling of an applicable statute of limitations on many occasions, including cases involving wrongful death. See, e.g., Benner v. J.H. Lynch Sons, Inc., 621 A.2d 332 (R.I. 1994).
The Rhode Island Supreme Court first addressed the so-called "discovery rule" in the context of a medical malpractice action in Wilkinson v.Harrington, 104 R.I. 224, 243 A.2d 745 (R.I. 1968). In that seminal case, wherein an injury did not manifest itself until some time after the alleged negligent conduct occurred, the Court interpreted the statute to allow for the tolling of the applicable statute of limitations. There, the plaintiff received radiation treatment for a tumor on her chest. Several years later, after the plaintiff began experiencing problems with her chest she required extensive surgery. Ultimately, she sought to bring suit against the radiologists on the theory that they had previously exposed her to an excessive amount of x-rays, thereby causing her injury.
In Wilkinson, the Court interpreted the statute to incorporate the discovery rule. The discovery rule has since been codified in §9-1-14.1. The Court held:
 "To require a [person] to seek a remedy before he knows of [available] rights, is palpably unjust. Under such circumstances, in order for a patient to secure and protect [any] legal rights against doctors for malpractice, the patient would be required to submit to complete examinations by a series of independent physicians after every operation or treatment he [or she] received from the physician of his [or her] first choice. The unreasonableness of such a result is self-evident." Id. at 238-39.
Thus, the statute of limitations does not commence until the plaintiff discovers or, in the exercise of reasonable diligence, should discover, that the plaintiff has suffered an injury due to a physician's negligent treatment. Id. The general rule as expressed in Wilkinson, therefore, is that the discovery rule is applicable and a statute of limitations tolled only when the alleged negligence and injury were latent and potentially undiscoverable. Wilkinson, 243 A.2d at 752; see also Meyette v. Leach,651 A.2d 1229 (R.I. 1994) (discussing tolling in medical malpractice case).
However, in Benner, the Rhode Island Supreme Court did not toll the statute of limitations for a wrongful death action following a motor vehicle accident. Filing suit three years and eighteen days after the accident that resulted in death, the plaintiff argued that the discovery rule in § 10-7-2 applied. The plaintiff argued that the triggering date for the statute of limitations was the date the plaintiff's expert rendered his opinion concerning negligence. That date, argued the plaintiff, was the time that the plaintiff first learned of the wrongful conduct of the parties allegedly responsible for the death. That date was also the date that the plaintiff filed suit. The defendant argued that the discovery rule had no application.
The Benner Court reasoned that in the context of a wrongful death action involving an automobile accident, the traumatic event is often immediately apparent, and the cause of action accrues at the time of the accident. Id. "It does not mean that the entire theory of the case immediately becomes apparent to the potential plaintiff. . . . Such an investigation may take months or even years and may continue after the filing of the action . . . . This does not mean that the statute of limitations will be tolled until the investigation is complete. Such a doctrine would render the statute of limitations meaningless and ineffective." Id. The Court continued by noting that absent an allegation and showing of fraud or misrepresentation regarding any difficulty in discovering and investigating the cause or the parties responsible, there is no basis for tolling. Id. at 337-38. Therefore, a plaintiff has a duty to diligently investigate any potential claims he may have "and is not allowed to use the discovery rule to postpone indefinitely the running of the statute of limitations." Id. at 338.
In Benner, the Court further recognized the distinction between a drug product-liability case, such as Anthony v. Abbot Labs., 490 A.2d 43 (R.I. 1985), discussed infra, where the injury, cause of injury, and knowledge of wrongful conduct occur at different points in time and the discovery rule was applied, with the facts as presented in Benner, concerning a "less-complex personal injury case," where the "accident, its purported cause and knowledge of possible wrongdoing" occurred at or near the time of death, within the statute of limitations and rendering the discovery rule inapplicable. Benner, 641 A.2d at 338. In that case, the plaintiff was aware of the decedent's death as a result of the accident on the day of the accident. Completing an investigation into the matter, in order to establish negligence with certainty, is not the deciding factor involved in tolling the statute. See id. Otherwise, the Court opined, a statute of limitations would be rendered meaningless. See id. Indeed, the Restatement (Second) of Torts succinctly states the proposition: "A cause of action for death is complete when death occurs." Restatement (Second)of Torts § 899 cmt. c (1979).
Tolling a statute of limitations based on the discovery rule has also been discussed by the Rhode Island Supreme Court on a number of occasions, each time reinforcing the holding of Wilkinson. In theMeyette decision, the Court refused to toll the statute of limitations because the alleged negligence in that case was neither latent nor undiscoverable if reasonable diligence had been used, which made the discovery rule inapplicable. In that case, though, the decedent passed away in 1983, pertinent x-ray records were not requested until 1988, and suit was filed in 1989. A Superior Court justice granted summary judgment, ruling that the suit was not timely filed and the discovery rule did not apply. The Rhode Island Supreme Court concurred with the ruling. 651 A.2d at 1229. Citing Wilkinson, the Rhode Island Supreme Court held that the statute of limitations may be tolled "until such time as the wrong manifests itself." Id. at 1230. The Court noted that if the plaintiff had exercised reasonable diligence at the time of the death by requesting the x-rays, which were available to her, then she would have discovered the alleged negligence within the three year statute of limitations. Therefore, because she was not reasonably diligent and the negligence could have been discovered within the statute of limitations, the Court found that there was no basis for tolling the statute pursuant to the discovery rule. Id.
Again, in Trudeau v. Dupre, 640 A.2d 534 (R.I. 1994), wherein the alleged negligence was neither latent nor undiscoverable, the discovery rule did not apply.[1] In Trudeau, the plaintiffs filed suit in 1991, alleging wrongful death and medical malpractice following the death of their son in utero in 1983. The plaintiffs averred that it was not until they read a 1988 newspaper article, discussing the revocation of the defendant's license after his malpractice resulted in the death of another infant, that wrongful conduct on the part of the defendant was first suspected; suit was filed within three years of that time. The defendants argued that the suit was not filed within the applicable statutes of limitations, § 10-7-2 and § 9-1-14.1. The hearing justice granted the defendant's motion for summary judgment, ruling that reasonable diligence would have led them to discover the alleged negligence within the statute of limitations. The Rhode Island Supreme Court held that the "defendant's alleged malpractice was neither latent nor potentially undiscoverable." 640 A.2d at 535. "Had plaintiffs exercised reasonable diligence at the time of their son's death, any act of alleged negligence on defendant's part could have been discovered."Id. Therefore, in Trudeau, the discovery rule was inapplicable and there was no basis for tolling the statute.
Similarly, in Ashey v. Kupchan, 618 A.2d 1268 (R.I. 1993), the Rhode Island Supreme Court discussed the tolling provision and its application to potentially latent and undiscoverable injuries. There, the decedent died following surgery and suit was commenced in a timely manner. After the initial suit was dismissed for naming an improper defendant, a second suit was filed; the action was brought pursuant to § 10-7-2, and was filed three years and six months after the death, naming the treating medical practitioners. In ruling against tolling the statute in the wrongful death action, the Court clarified its position with respect to tolling the statute in medical malpractice and drug-product liability actions. Id. at 1269-70. The Court stated:
 "In Wilkinson v. Harrington, 104 R.I. 224, 237, 243 A.2d 745, 752 (1968), we held that the discovery rule applied to a medical malpractice case wherein an injury remained latent for years, undiscoverable by the victim. Similarly in Anthony v. Abbott Laboratories, 490 A.2d 43, 45 (R.I. 1985), we held that the statute of limitations in a product liability action against a drug company does not begin to run until the plaintiff discovers the manufacturer's wrongful conduct. In both cases we expanded the statute of limitations period to protect individuals suffering from latent and potentially undiscoverable injuries. There is nothing undiscoverable about the injury or the negligence in this case. The plaintiffs were aware of the wrongful conduct shortly after the death of [the decedent]." Id. (Emphasis added).
In addition, receipt of expert testimony, confirming suspicions of negligence, is clearly not the operative discovery date. Id. The plaintiffs in Ashey, in opposing defendant's motion for summary judgment, argued, inter alia, that the operative date for statute of limitations purposes was the date the plaintiffs received information from an expert stating that the defendants had been negligent. The Rhode Island Supreme Court agreed with and quoted the trial justice's conclusion in that regard:
 "`To say that the [statute of limitations] doesn't start running until we have an opinion from an expert that there was medical malpractice, that is not the — that is not what the discovery rule addresses at all. To follow your line of reasoning, that would extend the statute of limitations indefinitely until someone had a letter saying, "It's my opinion that there was malpractice."'" Id.
at 1269.
Further, in Dionne v. Baute, 589 A.2d 833 (R.I. 1991), our Supreme Court was confronted with the similar issue of applying the tolling provision found in § 9-1-14.1(2) in a medical malpractice action. There, the plaintiff appeared at the emergency room on August 2, 1983, complaining of chest pains and arm numbness. The emergency room physician placed a call to the plaintiff's treating physician, with whom the plaintiff had been treating for heart problems. However, on that day, the plaintiff's treating physician was out and another doctor was on call and covering, as the two apparently had a "handshake partnership." The covering physician was informed that the plaintiff was being discharged because of an abatement of the symptoms. The covering physician allegedly did not make a note in the plaintiff's file regarding treatment, nor did he inform the plaintiff's regular treating physician of the emergency room treatment. Two weeks later, the plaintiff suffered a fatal heart attack.
Suit was commenced in 1985, naming the emergency room, the emergency room physician and the plaintiff's treating physician as defendants. However, the covering physician was not named. In 1988, some three years after suit was filed and five years from the date of the injury, the plaintiff's administratrix filed an amended complaint, adding the covering physician as a defendant. The covering physician defendant then moved for summary judgment on the grounds that the suit was untimely because it was more than three years after the plaintiff's death and more than three years after the plaintiff's administratrix had knowledge of the covering physician's participation in the plaintiff's treatment. Summary judgment was granted in favor of the moving physician.
On appeal, the Rhode Island Supreme Court, citing Wilkinson, noted that the statute of limitations begins to run when the plaintiff discovers, or should have discovered with the exercise of reasonable diligence, that the plaintiff "has sustained an injury as a result of the physician's negligent treatment." Id. at 834. In Dionne, the Court determined that the reasonable diligence standard of § 9-1-14.1 was applicable, in general, to "the efforts of a plaintiff who seeks to determine potential defendants in a malpractice dispute." Id. at 835. When performing an analysis of the reasonable diligence standard of § 9-1-14.1 in a medical malpractice action, "it is necessary for a plaintiff to investigate diligently who may or may not have had any exposure to liability during treatment." Id. In that case, the plaintiff's administratrix had access to the plaintiff's medical records as early as 1984 and did not file suit until 1988. The Court held that she did not satisfy the reasonable diligence standard in § 9-1-14.1. Id.; seealso Kougasian v. Davol, Inc., 687 A.2d 459 (R.I. 1997) (citing Dionne,
the Court noted that cause of action accrued upon diagnosis of cancer because the plaintiff knew at time of diagnosis about gas emissions from nearby plant and its possible carcinogenic effect).
On the other hand, the tolling provision of § 9-1-14.1(2) was applied in Zuccolo v. Blazar, 694 A.2d 717 (R.I. 1997), because the plaintiff had been reasonably diligent in ascertaining the actual injury, causation, and wrongful conduct. In that case, the plaintiff was prescribed a steroid by the defendants to alleviate the difficulty the plaintiff and his wife were having in conceiving children. In 1985, after several months of taking the steroid, the plaintiff began experiencing joint swelling. The plaintiff's general practitioner recommended that the plaintiff refrain from using the steroid, but neither he nor the three rheumatologists the plaintiff visited between late 1985 and 1988 diagnose avascular necrosis (a disease of the joints), despite the plaintiff's thoughts that the swelling was due to the steroid. The plaintiff was diagnosed with rheumatoid arthritis, which is not connected to steroid use. It was not until December 1988, after an MRI scan, that the plaintiff was diagnosed with avascular necrosis and informed that there was a possible connection to the previous medication.
Suit was initiated in July 1991. The defendants moved for summary judgment on the grounds that, because the plaintiff began taking the steroid in 1985 and began suffering injury within several months of that time, filing the complaint six years later was well beyond the three year statute of limitations in § 9-1-14.1. Id. In response, the plaintiff asserted that suit was timely because, in exercising reasonable diligence, the earliest that the plaintiff could have discovered that the use of the steroid caused his injury was December 1988; the discovery of the injury was within three years of filing the complaint. Id.
The Rhode Island Supreme Court analogized the case to the earlier drug product liability action, Anthony, because of the ingestion of a drug and the manifestation of adverse effects that occurred later in time. Id. at 719. The Court noted that no specific connection between the steroid ingestion and injury was made by the plaintiff's general practitioner and three different specialists had misdiagnosed the plaintiff's injury. Id.
The MRI scan was the first indication that the steroid had caused his injury. Id. It was only through the plaintiff's persistence in determining the cause of his injury that he discovered that the steroid was connected to his illness. See id. The Rhode Island Supreme Court could not "conceive of a set of facts that would more clearly demonstrate the concept of reasonable diligence," and the action was not barred by the statute of limitations because the discovery rule tolled the statute. Id.
In limited circumstances, the statute may potentially be tolled when the manifestation of an injury, cause of the injury and knowledge of the wrongdoing occur at different times, until such time as the use of reasonable diligence would have made the wrongful conduct known. SeeAnthony v. Abbott Labs., 490 A.2d 43, 46 (R.I. 1985); Renaud v.Sigma-Aldrich Corp., 662 A.2d 711 (R.I. 1995); see also Lee v. Morin,469 A.2d 358, 360 (R.I. 1983) (holding that the statute of limitations begins to run when evidence of injury to real property, resulting from negligence, is significant enough to allow the injured party to be alerted to the possibility of a defect).
In Anthony, the Rhode Island Supreme Court answered a certified question from the United States District Court for the District of Rhode Island. The question as posed required the Court to answer whether, for purposes of the discovery rule, "the statute of limitations begins to run in a drug product-liability action when the plaintiff discovers the personal injuries and its cause or when plaintiff discovers or should have discovered knowledge of defendant manufacturer's wrongful conduct." 490 A.2d at 44. Factually, the plaintiffs alleged injury as a result of exposure to a synthetic hormone while in utero (one of the plaintiffs was a mother who alleged injury as a result of the ingestion of the hormone while pregnant). The plaintiffs all knew of their collective injuries more than three years before filing suit and that the injuries were possibly caused by exposure to the hormone; they did not, however, have knowledge of any potential wrongful conduct on the part of the defendants at any point in time more than three years prior to filing suit.
In likening a drug product-liability action to a medical malpractice action, the Court cited Wilkinson for the proposition that one should have an opportunity to be aware of an injury, as well as its cause, before the statute of limitations begins to run. Id. at 45. "The same considerations that support the adoption of the discovery rule in medical-malpractice cases apply a fortiori to the drug product-liability field." Id. at 45 (Citations omitted). The emerging trend at that time was that a plaintiff should have some knowledge of wrongdoing before the statute of limitations starts to run. Id. at 46. The Court distinguishedWilkinson on the basis that, in Wilkinson, the cause of the injury and the wrongful conduct occurred at the same time. See id. The Rhode Island Supreme Court adopted the following rule: "[I]n a drug product-liability action where the manifestation of an injury, the cause of that injury, and the person's knowledge of the wrongdoing by the manufacturer occur at different points in time, the running of the statute of limitations would begin when the person discovers, or with reasonable diligence should have discovered, the wrongful conduct of the manufacturer." Id. A plaintiff does not need to be aware of all the legal elements of a cause of action before the statute of limitations begins to run. Id. Rather, the plaintiff only "has to have `some awareness, or imputed awareness, that her injuries were the result of some wrongdoing on the part of defendants.'" Id. (quoting Dawson v. Eli Lilly Co.,543 F. Supp. 1330, 1339 (D.D.C. 1982)).
Finally, in Renaud, the Court ordered the defendant's motion to dismiss to be granted on remand because the claim was time-barred. In that case, the plaintiff was allegedly injured as a result of exposure to acid fumes. She sued the parties whom she thought responsible for the container in which the acid was stored, within the applicable statute of limitations. Later, after the statute of limitations had run, it was determined that another party was responsible for the container in question. That party was added in an amended complaint. In arguing against the motion to dismiss brought by the newly-added defendant, the plaintiff asserted that she had exercised reasonable diligence in determining the proper defendants to the action, but had been frustrated in her attempts by various entities, including the other named defendants and her own employer. See 662 A.2d at 714. The Court found that argument to be without merit: "Whether plaintiff had in fact exercised reasonable diligence in attempting to identify the proper defendant was irrelevant to the disposition of [the defendant]'s motion to dismiss. Even if plaintiff had exercised reasonable diligence, no basis existed for tolling the statute of limitations[,]" for example, by alleging fraud or misrepresentation. Id.
 Discussion
This Court believes that our Rhode Island Supreme Court has given the Superior Court direction in determining whether to apply the discovery rule as a tolling provision for a statute of limitations. The Court has noted that the extension of the rule ought to be cautiously applied. The Court has directed that the rule should only apply in circumstances where an injury, causation of the injury, and gaining the knowledge of wrongful conduct are latent and potentially undiscoverable. The extension of the rule has been applied only when that information is obtained at different points in time. The rule does not apply when knowledge of the injury or negligence is capable, through the exercise of reasonable diligence, of being gleaned within the applicable statute of limitations. The discovery rule is not applied, and the statute of limitations is not tolled, when the basis for requesting tolling is the receipt of records or the receipt of expert testimony.
Based on this Court's interpretation of the legal principles and the facts of this case, the discovery rule does not apply here. The injury was not latent. The alleged negligence was discoverable. The Plaintiff did act with reasonable diligence in requesting the records. The decedent died. The plaintiff sued another hospital within the applicable statute of limitations. The Plaintiff obtained the pertinent records within the statute of limitations, indeed, within approximately three months from the date of death. No allegation of fraud or misrepresentation has been made; the records were expeditiously produced.
According to Ashey, Benner, and Meyette, the receipt of medical records or expert opinions is not the operative date for the triggering of a statute of limitations. The injury was neither latent nor undiscoverable. The facts here distinguish it from Wilkinson, Anthony,Renaud, and Zuccolo, where the injury and wrongful conduct were latent and potentially undiscoverable during the three year period. That fact also makes this case more analogous to Ashey, Benner, Meyette, andDionne, in which cases the injury was neither latent nor undiscoverable. Further, the facts of this case do not present this Court with one of the "limited circumstances" where the statute of limitations might be tolled, such as in Anthony or Lee, in which cases latency of injury or defect, and wrongdoing, were present. The matter at bar is also clearly distinguishable from Zuccolo, one of the few cases involving medical malpractice where the discovery rule was applied and the statute of limitations tolled, because here there was no misdiagnosis of an injury that would create a situation of latency or potential undiscoverability. In sum, none of the legal precedential bases for tolling have been presented to this Court. The Plaintiff had the medical records in his position and did not act. Armed with that knowledge, the Plaintiff had but one option: he had to bring suit within the three year statute of limitations that was triggered by the death of the decedent.
Therefore, this Court finds that because there is no reason to toll the statute of limitations pursuant to the discovery rule in § 10-7-2, the Plaintiff's three year statute of limitations expired three years from the date of the decedent's death. The decedent died on March 1, 1999, and the statute of limitations expired on March 1, 2002. Suit was not filed against these Defendants until June 6, 2002. The claims against the Defendants are time-barred. To hold otherwise would make statutes of limitations ineffective and render them meaningless.
 Conclusion
Accordingly, finding no genuine issues of material fact, this Court grants the Defendants' motions for summary judgment and finds that the statute of limitations contained in § 10-7-2 expired prior to the Plaintiff filing suit. Counsel are directed to confer and to submit to this Court forthwith for entry an order that is in conformity with this decision.
[1] It should be noted that the Rhode Island Supreme Court's ruling inGrossi v. The Miriam Hospital, 689 A.2d 403 (R.I 1997), is distinguishable and therefore not applicable to the case at bar. In that case, the plaintiff timely filed an action alleging medical malpractice and included "John Doe" defendants. Later, the plaintiff sought to amend the complaint by naming an allegedly negligent doctor as a defendant in place of the "John Doe" designation. The plaintiff did not request the decedent's medical records until after the suit was filed, and argued,inter alia, that she had been diligent in investigating and could not read the doctor's allegedly illegible name. The Court noted that §9-5-20 was the applicable statute to analyze because the plaintiff wanted to toll the statute of limitations from the time of the filing of suit against a known, but unidentifiable, defendant. The Court also noted that the discovery rule provision in § 9-1-14.1(2) did not apply because that tolling provision concerns discovering an injury due to medical malpractice, which was not the case in Grossi. In this case, the Plaintiff did not designate a "John Doe" defendant and did not attempt to toll the statute on the basis that he could not identify and locate the whereabouts of a known, but unidentifiable, defendant.